**STATE EX REL.** Jason Clay
**CARR, Petitioner,**

v.

**Ian WALLACE, Superintendent,
Respondent.**

No. SC 93487

Supreme Court of Missouri,
en banc.

Opinion issued July 11, 2017

Rehearing Denied October 5, 2017

56

Carr was represented by Craig A. Johnston of the public defender's office in Columbia, (573) 777-9977.

The state was represented by Stephen D. Hawke of the attorney general's office in Jefferson City, (573) 751-3321.

## ORIGINAL PROCEEDING IN HABEAS CORPUS

### PATRICIA BRECKENRIDGE, JUDGE

In 1983, Jason Carr was convicted of three counts of capital murder for killing his brother, stepmother, and stepsister when he was 16 years old. He was sentenced to three concurrent terms of life in prison without the possibility of parole for 50 years. His sentences were imposed without any consideration of his youth. Mr. Carr filed a petition for a writ of habeas corpus in this Court. He contends his sentences violate the Eighth Amendment because, following the decision in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), juvenile offenders cannot be sentenced to life without parole pursuant to mandatory sentencing schemes that preclude consideration of the offender's youth and attendant circumstances.

Mr. Carr was sentenced under a mandatory sentencing scheme that afforded the sentencer no opportunity to consider his age, maturity, limited control over his environment, the transient characteristics attendant to youth, or his capacity for rehabilitation. As a result, Mr. Carr's sentences were imposed in direct contravention of the foundational principle that imposition of a state's most severe penalties on juvenile offenders cannot proceed as though they were not children. Consequently, Mr. Carr's sentences of life without the possibility of parole for 50 years violate the Eighth Amendment. Mr. Carr must be resentenced so his youth and other attendant circumstances surrounding his offense can be taken into consideration to ensure he will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment. Habeas relief is granted.

## Factual and Procedural Background

Mr. Carr was born in 1968.[1] His parents divorced several years later. Immediately following the divorce, Mr. Carr and his brother lived with their paternal grandmother, although their mother had legal custody of the two boys. About a year and a half later, the boys began living with their mother, who had remarried. Due to ongoing physical and verbal abuse from their stepfather, the boys later lived with their biological father.

Mr. Carr's father was an alcoholic but had stopped drinking when Mr. Carr was about five years old and became a devout member of a Jehovah's Witnesses congregation. His father's religious beliefs seemingly led him to place strict restrictions on Mr. Carr, which caused conflict. For example, when he lived with his father, Mr. Carr was not allowed to play high school

basketball because practice conflicted with the family's home bible study. He was also not allowed to play video games, watch certain television shows, or date a girl who did not attend his father's place of worship. Mr. Carr lived with his father until he was around 14 years old.

The boys moved back in with their mother following her second divorce. Upon returning to his mother's house, Mr. Carr attempted to throw away his Jehovah's Witnesses books and pamphlets. Citing the expense of the materials, his mother had him store them in a closet. While living with his mother, he was allowed to join the high school basketball team and was generally a good student who did not get in serious trouble. Early in January 1983, when he was around 16 years old, Mr. Carr received a phone call from his father. Following the phone call, Mr. Carr became withdrawn. He quit the basketball team and would not see his friends. He stayed in his room most of the time, would not talk or eat much, and began reading the Jehovah's Witnesses materials he had kept. At Mr. Carr's request, his mother took him to live with his father, his stepmother, and stepsister in late January 1983.

Sometime in early March 1983, Mr. Carr called his mother. He was upset and repeatedly told his mother he was "bad" because he wanted to do things that were against church rules, such as play basketball, date a girl outside the faith, and drive. Evidence presented at his trial suggested his father made him publicly renounce the girl he wanted to date during a worship service. In addition, his mother testified at trial that Mr. Carr "kept saying he was trying to do the right thing but everything he did was bad and he said his

---

1. Mr. Carr did not provide this Court with a transcript from his criminal trial. The facts herein are, therefore, taken without attribu-

tion from *State v. Carr*, 687 S.W.2d 606 (Mo. App. 1985).

dad kept telling him he was bad." She also testified that he said that the congregation "kept telling him that he was bad because he wasn't going by their rules." Based on Mr. Carr's demeanor during the phone call, his mother testified she believed he was suffering from an ongoing mental disease or defect that would not have allowed him to "calmly and coolly reflect on killing someone."

On March 14, 1983, Mr. Carr and his father went to a worship service. During the service, his father "rebuked and ridiculed" him for failing to recite a biblical passage. After the service, Mr. Carr stayed at his grandmother's house. The following morning, he did not attend high school. Instead, he returned to his father's house, where he stayed throughout the day.

At approximately 4:15 p.m., his brother and stepsister returned home from school. When they entered the house, Mr. Carr shot his brother at close range with a .22 caliber rifle, hitting him in the left side of the back of his head and in front of his right ear. He shot his stepsister in her back and in her left eye. When his stepmother returned home from work at around 4:35 p.m., he shot her at close range above the right eye and in the right temple. When Mr. Carr's father arrived home at approximately 5:10 p.m., Mr. Carr attempted to shoot his father, but the rifle did not fire. When Mr. Carr tried to insert another shell into the rifle, his father took the gun from him, seemingly without resistance. After being disarmed, Mr. Carr began crying. He told his father he "kill[ed] them all," including his brother, even though he loved him.

At the time of the offenses, Mr. Carr was 16 years old. He was originally charged as a juvenile offender and then certified to be tried as an adult for three counts of capital murder under section 565.001.[2] At the time, capital murder could be punished by death or a life sentence without the possibility of parole for 50 years. Section 565.008.1. The state did not seek the death penalty. Therefore, if convicted, the only eligible sentence Mr. Carr could receive was life without the possibility of parole for 50 years.

In December 1983, a jury convicted Mr. Carr of three counts of capital murder. Following the jury's verdict, the trial court sentenced him to three concurrent sentences of life imprisonment without the eligibility for parole for 50 years. Because the state did not seek the death penalty, the defense was not required to and did not present any mitigating evidence prior to sentencing. The trial court's judgment stated that Mr. Carr would be scheduled for a parole hearing in March 2031. The court of appeals affirmed his convictions on direct appeal. *Carr*, 687 S.W.2d at 613. Mr. Carr's claim of ineffective assistance of counsel was also denied. *Id.* at 611.

Mr. Carr filed a petition for a writ of habeas corpus in this Court after the Supreme Court of the United States' decision in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). In *Miller*, the Supreme Court held that juveniles could not be sentenced to a mandatory sentence of life without the possibility of parole in a homicide case without first considering whether this punishment was just and appropriate given the juvenile offender's age, development, and the circumstances of the offense. *Id.* at 2469. Mr. Carr argued his mandatory sentences of life without the possibility of parole for 50 years violate the Eighth Amendment because they were imposed on him for offenses he committed as a juvenile without

---

**2.** Unless otherwise noted, all statutory citations are to RSMo 1978.

consideration of any of the factors in *Miller*.

While Mr. Carr's habeas petition was pending, the Supreme Court held that *Miller*'s substantive rule must be applied retroactively on collateral review of a juvenile offender's mandatory sentence of life without parole. *Montgomery v. Louisiana*, ⸺ U.S. ⸺, 136 S.Ct. 718, 736, 193 L.Ed.2d 599 (2016). This Court then set this case for briefing and oral argument.

### Standard of Review for Habeas Relief

 This Court has jurisdiction to "issue and determine original remedial writs." Mo. Const. art. V., sec. 4. "Habeas corpus relief is the final judicial inquiry into the validity of a criminal conviction and functions to relieve [prisoners] whose convictions violate fundamental fairness." *State ex rel. Clemons v. Larkins*, 475 S.W.3d 60, 76 (Mo. banc 2015). A prisoner is entitled to habeas corpus relief where he proves that he is "restrained of his ... liberty in violation of the constitution or laws of the state or federal government." *Id.* Although prisoners are generally required to raise constitutional claims on direct appeal or in a post-conviction proceeding, a defendant has cause for failing to raise such claims where a new constitutional rule may be applied retroactively on collateral review. *State ex rel. Simmons v. Roper*, 112 S.W.3d 397, 401 (Mo. banc 2003).

 Mr. Carr did not raise his Eighth Amendment claims on direct review or in a post-conviction proceeding. Nevertheless, in *Montgomery*, 136 S.Ct. at 736, the Supreme Court held that *Miller*'s new substantive rule of constitutional law must be applied retroactively on collateral review of a juvenile offender's sentence. In doing so, the Supreme Court explained that a "substantive rule ... forbids criminal punishment of certain primary conduct or prohibits a certain category of punishment for a class of defendants because of their status or offense" and can be applied retroactively. *Id.* at 732 (internal quotation omitted). It reasoned *Miller* announced a substantive rule of constitutional law because *Miller* rendered a mandatory penalty unconstitutional for a class of defendants because of their status—"juvenile offenders whose crimes reflect the transient immaturity of youth." *Id.* at 734. Because Mr. Carr is seeking retroactive application of *Miller*'s substantive rule of constitutional law to the facts and circumstances of this case, Mr. Carr has cause for failing to previously raise his constitutional claims. He may seek habeas corpus relief on his claims that his sentences were imposed in violation of the Eighth Amendment pursuant to *Miller*.

### Mr. Carr's Sentences Violate the Eighth Amendment

 Mr. Carr contends his three concurrent sentences of life without the possibility of parole for 50 years violate the Eighth Amendment's prohibition against cruel and unusual punishment because they were mandatory sentences for offenses he committed as a juvenile that were imposed without any consideration of his youth and attendant circumstances. To withstand the Eighth Amendment's prohibition of cruel and unusual punishment, the punishment for a crime must be proportional to both the offender and the offense. *Miller*, 132 S.Ct. at 2463.

 In *Miller*, the Supreme Court held that mandatory sentencing schemes that require juveniles convicted of homicide to receive lifetime incarceration without the possibility of parole, regardless of their age, age-related characteristics, and the nature of their crimes, violate the Eighth Amendment principle of proportionality. *Id.* at 2475. The Supreme Court

explained that "children are constitutionally different from adults for purposes of sentencing." *Id.* at 2464. Because juveniles are constitutionally different for purposes of sentencing, an "offender's juvenile status can play a central role in considering a sentence's proportionality." *Id.* at 2466 (internal quotation omitted). Therefore, "criminal procedure laws that fail to take defendants' youthfulness into account at all [are] flawed." *Id.* (internal quotation omitted).

⬛ Sentencers should be given the opportunity to consider the mitigating qualities of a defendant's youth. *Id.* at 2467. A state's severest penalties cannot be imposed on juveniles "as though they were not children." *Id.* at 2466. A sentencing scheme that makes youth and all its attendant circumstances irrelevant to imposition of that harshest prison sentence "poses too great a risk of disproportionate punishment." *Id.* at 2469. By their nature, mandatory penalties "preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 2467. Judges and juries "must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 2475.

Here, *Miller* controls because Mr. Carr was sentenced to the harshest penalty other than death available under a mandatory sentencing scheme[3] without the jury having any opportunity to consider the mitigating and attendant circumstances of his youth. Mr. Carr was found guilty of three counts of capital murder under section 565.001.[4] He was thereafter sentenced under section 565.008.1, which provided:

> Persons convicted of the offense of capital murder shall, if the judge or jury so recommends after complying with the provisions of sections 565.006 and 565.012, be punished by death. If the judge or jury does not recommend the imposition of the death penalty on a finding of guilty of capital murder, the convicted person shall be punished by imprisonment by the division of corrections during his natural life and shall not be eligible for probation or parole until he has served a minimum of fifty years of his sentence.

The state did not seek the death penalty against Mr. Carr; therefore, the only penalty that could be imposed was life without the possibility of parole for 50 years. This penalty was imposed for each of his three convictions without any consideration of Mr. Carr's youth. This was done despite section 565.006 requiring a presentence hearing during which the jury or judge was to hear "additional evidence in extenuation, mitigation, and aggravation of punishment," including "[t]he capacity of the defendant to appreciate the criminality of his conduct" and "[t]he age of the defendant at the time of the crime." *See* section 565.012. In Mr. Carr's case, no presentence hearing was held because there was no other statutorily authorized sentence that could be considered by the judge or

---

3. At the time of Mr. Carr's conviction, capital murder was the only crime for which the death penalty could be imposed. The alternative punishment available under the capital murder statute was life without the possibility of parole for 50 years, thereby making it the second harshest penalty that could be imposed on a homicide offender. *See* section 565.008.

4. Under section 565.001, "[a]ny person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder."

jury.[5] Like *Miller*, the mandatory statutory sentencing scheme in place at the time of Mr. Carr's conviction denied the sentencer the opportunity to consider the attendant characteristics of Mr. Carr's youth before imposing the severe punishment of a life sentence without the possibility of parole for 50 years.[6]

As the Supreme Court explained, "in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult." *Miller*, 132 S.Ct. at 2468. A harsh, mandatory sentence for a juvenile "precludes consideration of [a defendant's] chronological age and its hallmark features–among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.*

It prevents taking into account the family and home environment that surrounds him–and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth–for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Id.* (internal citation omitted).

The record in this case reflects that many of these mitigating factors were relevant to Mr. Carr at the time he committed the three capital murder offenses. Yet the jury was afforded no opportunity to consider his age, maturity, limited control over his environment, the transient characteristics attendant to youth, or his capacity for rehabilitation when assessing whether the punishment of life without the possibility of parole for 50 years proportionately punished him as a juvenile offender. *Id.* at 2464-68.

In doing so, the most severe mandatory penalty was imposed on Mr. Carr in direct contravention of the foundational principle "that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Id.* at 2466. Consequently, Mr. Carr's sentences [7] violate the Eighth Amendment because they were "imposed without any opportunity for the sentencer to consider whether th[e] punishment[s were] just and

---

5. Had the death penalty been sought and imposed, this penalty would have been invalidated following *Roper v. Simmons*, 543 U.S. 551, 578-79, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), which held that the Eighth Amendment prohibits the imposition of the death penalty on defendants who commit first degree murder at age 17 or younger.

6. As previously explained, at the time Mr. Carr committed the offenses, premeditated murder was classified as "capital murder" and was punishable by either death or life in prison without the possibility of parole for 50 years. Section 565.001; section 565.008. In 1984—the year following Mr. Carr's offenses—Missouri repealed its capital murder statute and classified premeditated murder as first degree murder punishable by death or life in prison without the possibility of parole. Section 565.020, RSMo 1984.

7. Although this case involves multiple offenses, Mr. Carr's three sentences of life without the possibility of parole for 50 years were all run concurrently. This case does not present the same stacking or functional equivalent sentences issue presented in *Willbanks v. Missouri Department of Corrections*, SC95395, 522 S.W.3d 238, 2017 WL 2952445 (Mo. banc July 11, 2017) or *State v. Nathan*, SC95473, 522 S.W.3d 881, 2017 WL 2952773 (Mo. banc July 11, 2017).

appropriate in light of [Mr. Carr's] age, maturity, and other factors discussed in *Miller*." *State v. Hart*, 404 S.W.3d 232, 238 (Mo. banc 2013).

## Resentencing under *Hart*

Because Mr. Carr's sentences, as imposed, violate the Eighth Amendment, he must be resentenced. Following *Miller*, this Court outlined the procedure by which juvenile offenders must be resentenced in *Hart*.

First, the sentencer must consider whether Mr. Carr's sentences of life without the possibility of parole for 50 years are just and appropriate considering his youth, maturity, and the other *Miller* factors. *Id.* at 241. If Mr. Carr elects to have a jury resentence him, the jury must be "instructed properly that it may not assess and declare" his punishment for capital murder should be life without the possibility of parole for 50 years "unless it is persuaded beyond a reasonable doubt that this sentence is just and appropriate under all the circumstances." *Id.* (internal quotation omitted). The jury must also be instructed, "before it begins its deliberations, that if it is not persuaded that life without parole [for 50 years] is a just and appropriate sentence under all the circumstances of the case, additional instructions concerning applicable punishments will be given at that time." *Id.* at 242.

If, after considering all the circumstances, the sentencer finds Mr. Carr qualifies for life without the possibility of parole for 50 years, then that is the only authorized statutory sentence. *Id.* If, however, the sentencer is not persuaded that this sentence is just and appropriate, Mr. Carr cannot receive that sentence. Instead, the trial court must declare section 565.008 void as applied to Mr. Carr on the ground that it does not provide a constitutionally valid punishment for his offense. *Id.*

If section 565.008 is void, the trial court must vacate the jury's verdict finding Mr. Carr guilty of capital murder under section 565.001 and enter a new finding that he is guilty of murder in the second degree under section 565.004.[8] *Id.* After the sentencer enters the finding that he is guilty of murder in the second degree, the sentencer must determine his sentence based on the statutory range applicable to these offenses. *Id.* at 243. Under section 565.008.2, "[p]ersons convicted of murder in the second degree shall be punished by imprisonment by the division of corrections for a term of not less than ten years." If Mr. Carr elects to have a jury resentence him, the jury will be provided with additional instructions regarding sentencing for murder in the second degree. *Id.* As this Court instructed in *Hart*, these additional instructions "should not be submitted to the sentencer—unless and until the sentencer has deliberated and rejected sentencing [the juvenile offender] to [life without the possibility of parole for 50 years] for [capital murder]." *Id.* Mr. Carr would then be resentenced for second degree murder within the statutorily authorized range of punishments for that offense. *Id.*

## Conclusion

Mr. Carr was sentenced to three concurrent terms of life without the possibility of

---

**8.** Murder in the second degree under section 565.004 included "[a]ll other kinds of murder at common law, not herein declared manslaughter or justifiable or excusable homicide[.]" It is a lesser-included offense of capital murder under section 565.001 insofar as it "sufficiently test[s] a jury's belief in the crucial facts for a conviction of capital murder."

*State v. Baker*, 636 S.W.2d 902, 905 (Mo. banc 1982); *see also Hart*, 404 S.W.3d at 242 n.8 (similarly holding that if the statute for first degree murder is void as applied to a juvenile offender and, therefore, the juvenile cannot be found guilty of first degree murder, it is proper to find the juvenile offender guilty of the lesser-included offense).

parole for 50 years for three counts of capital murder he committed when he was 16 years old. He was sentenced without the jury or the judge considering the mitigating factors of his youth, the attendant characteristics of youth, the circumstances of the offense, or his potential for rehabilitation. Because Mr. Carr's sentence was imposed without any consideration of his youth, his sentence violates the Eighth Amendment. Mr. Carr must be resentenced. Habeas relief granted.

Draper, Wilson, Russell and Stith, JJ., concur; Fischer, C.J., dissents in separate opinion filed.

Powell, J., not participating.

Zel M. Fischer, Chief Justice

## DISSENTING OPINION

The principal opinion cherry picks a passage out of *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), to justify its holding that Carr's three concurrent terms of life in prison without the possibility of parole for 50 years violate the Eighth Amendment. The principal opinion's conclusion—that *"Miller* controls because Mr. Carr was sentenced to the harshest penalty other than death available under a mandatory sentencing scheme"—is based on a fundamental misreading of *Miller*. Indeed, it ignores this Court's unanimous decision in *State v. Hart*, 404 S.W.3d 232 (Mo. banc 2013), to apply *Miller* only in cases in which a juvenile offender was sentenced to a mandatory sentence of life in prison without the possibility of parole. This Court in *Hart* eloquently explained that *Miller* stands for the proposition that:

> the Eighth Amendment forbids a sentencing scheme that **mandates life in prison without possibility of parole for juvenile offenders.** By making youth (and all that accompanies it) irrel-

evant to imposition of **that harshest prison sentence,** such a scheme poses too great a risk of disproportionate punishment.... *Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different,* and how those differences counsel against irrevocably sentencing them to a **lifetime in prison.**

404 S.W.3d at 237–38 (quoting *Miller*, 132 S.Ct. at 2469) (emphasis added). "That harshest prison sentence" in *Miller* referred to a mandatory sentence of life in prison without the possibility of parole, not three concurrent terms of life in prison without the possibility of parole for 50 years. In the interest of further clarity, the Supreme Court in *Miller* explained its

> individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing **the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole,** regardless of their age and age-related characteristics and the nature of their crimes, the mandatory-sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

132 S.Ct. at 2475 (emphasis added). *See also id.* at 2460, 2466, 2468–69 (cataloging age-related factors that the sentencer must be allowed to consider before the Eighth Amendment will permit a juvenile offender to be **sentenced to life without parole**) (emphasis added); *Hart*, 404 S.W.3d at 234–35 (stating *Miller* "holds only that **life without parole** may not be imposed unless the sentencer is given an opportunity to consider the individual facts and circumstances that might make **such a**

sentence unjust or disproportionate") (emphasis added) (footnote omitted).

Carr's three concurrent terms of life in prison without the possibility of parole for 50 years do not run afoul of *Miller*. *Miller* only applies to cases in which a sentencing scheme "mandates life in prison without possibility of parole for juvenile offenders." 132 S.Ct. at 2469. Therefore, *Miller* does not require vacating Carr's sentences. Nor are Carr's sentences inconsistent with this Court's or any of the Supreme Court's current Eighth Amendment jurisprudence. Indeed, the principal opinion's holding that *Miller* applies to Carr's sentences is, undoubtedly, not just an extension of *Miller*, but also calls into question whether any mandatory minimum sentence for murder could be imposed on a juvenile offender. Accordingly, I decline to concur with that implication and remain bound by this Court's unanimous decision in *Hart* to apply *Miller* only to cases involving a mandatory sentence of life in prison without the possibility of parole.

Carr was 16 years old at the time he committed the offenses. He will become parole eligible in 2033, when he is 66 years old. In fact, on July 3, 2001, the Parole Board informed Carr that he would have a parole hearing in March 2031, two years before he becomes parole eligible. Such parole eligibility from the outset of his sentence gave Carr a meaningful opportunity to obtain release within his life expectancy.