DON E. BURRELL, P.J.
This is an original proceeding in habeas corpus. Robert W. Allen ("Petitioner") was sentenced to life without eligibility for parole for fifty years ("LWOP 50") for a capital murder he committed in January 1984 as a sixteen-year-old. See sections 565.001 and 565.008.1.[1] Petitioner also received two terms of life imprisonment for first-degree murder (felony murder) and armed criminal action for other offenses he committed in the same course of events. See sections 565.003, 565.008.2, and 571.015.1. All three sentences were run consecutively.[2]
*389 Petitioner seeks habeas relief only regarding his LWOP 50 sentence on the basis that it violates the Eighth Amendment in light of Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and State ex rel. Carr v. Wallace, 527 S.W.3d 55 (Mo. banc 2017).[3] Petitioner maintains that his sentence for capital murder should be overturned and the case remanded for a resentencing hearing on that count pursuant to the procedure described in Carr and State v. Hart, 404 S.W.3d 232 (Mo. banc 2013). The State maintains that "[i]t does not matter whether one part of the sentence would be impermissible standing alone. Instead, the aggregate sentence is analyzed under the framework in Willbanks [v. Department of Corrections, 522 S.W.3d 238 (Mo. banc 2017)]."
Factual Background and Procedural History
At the time of Petitioner's offenses, capital murder was punishable only by death or a LWOP 50 sentence. See section 565.008.1. "Although the [S]tate requested the death penalty, the jury could not agree upon punishment, and the trial court did not impose the death penalty." Allen, 710 S.W.2d at 916. The State points out that Petitioner's additional life sentence for first degree felony murder had no mandatory minimum sentence to be served for purposes of parole eligibility, and the armed criminal action sentence had a three-year mandatory minimum before parole eligibility was established.
Petitioner is incarcerated at the South Central Correctional Center. His first attempt to obtain habeas relief on the same grounds asserted in the instant petition was denied by the circuit court. The circuit court noted that Petitioner's sentences were consecutive, thereby concluding that "the sentencer found after considering all relevant factors that the mandatory minimum for capital punishment of no parole for fifty years was not enough punishment. The sentencer thus satisfied the duty noted in [Willbanks] to `impose a sentence on a case-by-case basis.' [522 S.W.3d at 243]." We disagree.
Analysis
1. The LWOP 50 Sentence
"A prisoner is entitled to habeas corpus relief where he proves that he is `restrained of his ... liberty in violation of the constitution or laws of the state or federal government.'" Carr, 527 S.W.3d at 59 (quoting State ex rel. Clemons v. Larkins, 475 S.W.3d 60, 76 (Mo. banc 2015)). "To withstand the Eighth Amendment's prohibition of cruel and unusual punishment, the punishment for a crime must be proportional to both the offender and the offense." Id. In Carr, our high court reasoned that "[s]entencers should be given the opportunity to consider the mitigating qualities of a defendant's youth." Id. at 60. Indeed, "`criminal procedure laws that fail to take defendants' youthfulness into account at all [are] flawed.'" Id. quoting Miller, 567 U.S. at 473-74, 132 S.Ct. 2455.
In Carr, the juvenile defendant was found guilty of three counts of capital murder, but he was sentenced to three concurrent sentences of LWOP 50 after the State chose not to seek the death penalty. Id. at *390 58. "Like Miller, the mandatory statutory sentencing scheme in place at the time of Mr. Carr's conviction denied the sentencer the opportunity to consider the attendant characteristics of Mr. Carr's youth before imposing the severe punishment of a life sentence without the possibility of parole for 50 years." Id. at 61. The Court found that "[b]ecause Mr. Carr's sentence was imposed without any consideration of his youth, his sentence violates the Eighth Amendment[,]" and he "must be resentenced." Id. at 63.
The State responds - without citation to supporting authority - that "the analysis is different [than that presented in Carr] when, as here, a court has chosen to impose consecutive, additional sentences for each crime. In that circumstance, no individual sentence is analyzed on its own for whether it would be impermissible." Based on that assertion, the State maintains that "Willbanks controls this case, not Carr or Nathan."[4]
The sentences at issue in Willbanks did not involve capital murder. See 522 S.W.3d at 239-40.
Willbanks was 17 years old when he was charged with kidnapping, first-degree assault, two counts of first-degree robbery, and three counts of armed criminal action. He was convicted and sentenced to consecutive prison terms of 15 years for the kidnapping count, life for the assault count, 20 years for each of the two robbery counts, and 100 years for each of the three armed criminal action counts.
Id. at 239. Willbanks asserted that "his sentences, in the aggregate, will result in the functional equivalent of a life without parole sentence." Id. at 239. He went on to point out that "[t]he Supreme Court held [in Graham v. Florida, 560 U.S. 48, 82, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010),] that the Eighth Amendment prohibits juvenile nonhomicide offenders from being sentenced to life without parole." 522 S.W.3d at 242.
In rejecting Willbanks's argument, our high court pointed out that he "was not sentenced to life without parole." Id. "The Supreme Court has never held that consecutive *391 lengthy sentences for multiple crimes in excess of a juvenile's life expectancy is the functional equivalent of life without parole." Id. at 246. Further, "absent guidance from the Supreme Court, [the Supreme Court of Missouri] should not arbitrarily pick the point at which multiple aggregated sentences may become the functional equivalent of life without parole." Id. at 245.
Willbanks was then distinguished in Carr, our high court noting that "[a]though this case involves multiple offenses, Mr. Carr's three sentences of life without the possibility of parole for 50 years were all run concurrently. This case does not present the same stacking or functional equivalent sentences issue presented in Willbanks[.]" 527 S.W.3d at 61 n.7. Nonetheless, the State insists that the addition of the other sentences is what removes Petitioner's case from analysis under Carr.[5]
As in Willbanks, 522 S.W.3d at 239, Petitioner received consecutive sentences. We believe that the critical difference, however, is that no single sentence imposed in Willbanks offended the Eighth Amendment. Here, Petitioner is not challenging his sentences for first degree murder and armed criminal action, nor the fact that his sentences were imposed consecutively. Instead, Petitioner contends that "if one part of a sentence is impermissible, the defendant is entitled to be resentenced as to the unconstitutional part of the sentence even if there are other sentences running consecutively to it." Here, unlike Willbanks, no sentences need to be stacked with any others to reach a "functional" sentence of life in prison for at least fifty years before parole eligibility is reached. Petitioner has an actual LWOP 50 sentence that is separate and distinct from any of his additional sentences.
While it may well be that the trial court determined the brutal nature of Petitioner's offenses warranted consecutive sentences, the LWOP 50 sentence was mandatory after the death penalty was rejected. See section 565.008.1 and Allen, 710 S.W.2d at 914. There was no room for consideration of second-degree murder as an alternative in considering "whether [Petitioner's sentence] of life without the possibility of parole for 50 years [was] just and appropriate considering his youth, maturity, and the other Miller factors." Carr, 527 S.W.3d at 62. It was the mandatory aspect of Mr. Carr's LWOP 50 sentences that made them unconstitutional under Miller:
[T]he most severe mandatory penalty was imposed on Mr. Carr in direct contravention of the foundational principle "that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." [Miller] at 2466. Consequently, Mr. Carr's sentences violate the Eighth Amendment because they were "imposed without any opportunity for the sentencer to consider whether th[e] punishment[s were] just and appropriate in light of [Mr. Carr's] age, maturity, and other factors discussed in Miller." State v. Hart, 404 S.W.3d 232, 238 (Mo. banc 2013).
*392 Carr, 527 S.W.3d at 61-62 (footnote omitted). Thus, Carr is applicable and binding on this court, and it entitles Petitioner to the habeas relief he seeks.
2. The Applicable Resentencing Procedure
The Court in Carr applied the procedures outlined in Hart in stating the proper resentencing procedure:
First, the sentencer must consider whether Mr. Carr's sentences of life without the possibility of parole for 50 years are just and appropriate considering his youth, maturity, and the other Miller factors. [Hart, 404 S.W.3d at 241]. If Mr. Carr elects to have a jury resentence him, the jury must be "instructed properly that it may not assess and declare" his punishment for capital murder should be life without the possibility of parole for 50 years "unless it is persuaded beyond a reasonable doubt that this sentence is just and appropriate under all the circumstances." Id. (internal quotation omitted). The jury must also be instructed, "before it begins its deliberations, that if it is not persuaded that life without parole [for 50 years] is a just and appropriate sentence under all the circumstances of the case, additional instructions concerning applicable punishments will be given at that time." Id. at 242.
If, after considering all the circumstances, the sentencer finds Mr. Carr qualifies for life without the possibility of parole for 50 years, then that is the only authorized statutory sentence. Id. If, however, the sentencer is not persuaded that this sentence is just and appropriate, Mr. Carr cannot receive that sentence. Instead, the trial court must declare section 565.008 void as applied to Mr. Carr on the ground that it does not provide a constitutionally valid punishment for his offense. Id.
If section 565.008 is void, the trial court must vacate the jury's verdict finding Mr. Carr guilty of capital murder under section 565.001 and enter a new finding that he is guilty of murder in the second degree under section 565.004. Id. After the sentencer enters the finding that he is guilty of murder in the second degree, the sentencer must determine his sentence based on the statutory range applicable to these offenses. Id. at 243. Under section 565.008.2, "[p]ersons convicted of murder in the second degree shall be punished by imprisonment by the division of corrections for a term of not less than ten years." If Mr. Carr elects to have a jury resentence him, the jury will be provided with additional instructions regarding sentencing for murder in the second degree. Id. As this Court instructed in Hart, these additional instructions "should not be submitted to the sentencer - unless and until the sentencer has deliberated and rejected sentencing [the juvenile offender] to [life without the possibility of parole for 50 years] for [capital murder]." Id. Mr. Carr would then be resentenced for second degree murder within the statutorily authorized range of punishments for that offense. Id.
527 S.W.3d at 62 (footnote omitted).
Habeas relief is granted. Petitioner's LWOP 50 sentence for capital murder is vacated, and the case is remanded for resentencing on that count consistent with the procedure outlined in Carr. See 527 S.W.3d at 62.
NANCY STEFFEN RAHMEYER, J. - CONCURS.
GARY W. LYNCH, J. - CONCURS.

All statutory references are to RSMo 1978.

Petitioner's sentence was affirmed in State v. Allen, , 917 (Mo. App. W.D. 1986). That opinion describes "[t]he brutal facts of these murders[.]" Id. at 914.

Petitioner asserts that should he be found guilty of second-degree murder instead of capital murder following the proceedings outlined later in this opinion, his conviction for armed criminal action must also be corrected as it is predicated on the capital murder conviction. We do not decide that issue here. The record before us does not establish that capital murder was the predicate offense for the armed criminal action offense.

The last case mentioned is presumably a reference to State v. Nathan, , 256 and 271 n.12 (Mo. banc 2013) (a sentence of life without parole for first-degree murder committed while the offender was a juvenile was reversed as violating the Eighth Amendment) (" Nathan I "). The State argues that Nathan I "has been superseded[,]" citing State v. Nathan, , 892 (Mo. banc 2017) (" Nathan II "), in addition to its arguments regarding Willbanks. In Nathan I, the defendant argued "that he also should be re-sentenced on the remaining 21 non-homicide counts on which he was found guilty and sentenced below. Nathan did not appeal those convictions, however." 404 S.W.3d at 271 n.12. The Court noted that "[t]o the extent that Nathan was attempting to assert a claim based on the combined effect of the non-homicide sentences and his sentence for the murder charge, such a claim is premature until after the resentencing procedure described above, and will be moot if Nathan is sentenced to life without parole." Id. Such a claim was advanced in Nathan II and characterized as a " Graham Claim [,]" 522 S.W.3d at 885, after Nathan was resentenced for second-degree murder instead of first-degree murder and sentenced to life imprisonment while he was also subject to multiple other consecutive sentences. Id. at 884-85. Our high court found: "Unlike in Graham, Nathan was found guilty of second-degree murder along with multiple nonhomicide offenses. Therefore, Nathan's claim under Graham is denied." Id. at 888 (footnote omitted). It concluded, "[f]or this Court to hold Graham and Miller apply to consecutive sentences amounting to the functional equivalent of life in prison without the possibility of parole, it would undoubtedly need to extend both holdings to uncharted waters." Id. at 893. Again, none of this alters the precedent set forth in Carr concerning the LWOP 50 sentence that Petitioner challenges here.

The State also argues that review of Petitioner's sentence may advance no further than "the framework in [ Graham ]" and then must fail because Petitioner shows no national consensus against the type of sentence he received and no insufficiency in terms of the sentence's penological goals. This argument ignores that the Supreme Court was considering a new type of categorical challenge in Graham as it worked through the analyses of a national consensus and penological goals. 560 U.S. at 61, 62, and 67, . After doing so, it concluded that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." Id. at 82, .