EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>John Álvarez Chevalier<br><br>Peticionario | Certiorari<br><br>2018 TSPR 20<br><br>199 ____ |

Número del Caso: CC-2017-457

Fecha: 12 de febrero de 2018

Tribunal de Apelaciones:
    Región Judicial de San Juan

Abogados de la parte peticionaria:

    Lcdo. Enrique Julia Ramos
    Lcda. Iris Rosario Nieves

Oficina del Procurador General:
    Lcdo. Luis Román Negrón
    Procurador General

Materia: Resolución del Tribunal con Voto Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | | |
|---|---|---|
| Recurrido | | |
| v. | CC-2017-457 | Certiorari |
| John Álvarez Chevalier | | |
| Peticionario | | |

RESOLUCIÓN

San Juan, Puerto Rico, a 12 de febrero de 2018.

A la moción de reconsideración, no ha lugar.

Notifíquese inmediatamente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

El Juez Asociado señor Martínez Torres hace constar la siguiente expresión: "El Juez Asociado señor Martínez Torres vota conforme con esta Resolución. El peticionario John Álvarez Chevalier fue sentenciado hace 24 años a cumplir penas consecutivas por dos cargos de asesinato, cinco cargos de robo, tentativa de robo, dos cargos de conspiración y cinco transgresiones de la Ley de Armas. No fue convicto por un solo delito. Incluso, se puede imponer una pena perpetua a un menor de edad convicto por un asesinato, siempre que sea elegible a libertad bajo palabra. Miller v. Alabama, 567 US 460 (2012). Por eso, la doctrina que se cita en el voto disidente no aplica. Lo que ocurre es que todas las condenas -a cumplirse de manera consecutiva- suman 372 años de reclusión. La sentencia es válida y final, y no se cometió error. Hay que ser justo con todos, incluyendo nuestra sociedad, y no solamente con el convicto. Por eso, rehúso traicionar la seguridad de los habitantes de esta Isla para intervenir indebidamente y más de dos décadas después con una sentencia correcta en la que no se cometió error alguno. Rehúso también insertarme en el tema mediático de moda (el castigo a menores de edad) para justificar que se libere a quien todavía no ha pagado ni una cuarta parte de su deuda con la sociedad. Hay maneras de rehabilitarse -es decir, de mejorar como ser humano- en la cárcel. Eso no es fácil, pero hay que tomar en cuenta que delinquir tiene consecuencias graves. La rehabilitación, que dicho sea de paso todavía no se ha

demostrado en este caso, no conlleva siempre salir de prisión como asume el voto disidente".

El Juez Asociado señor Estrella Martínez emitió un voto disidente.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>John Álvarez Chevalier<br><br>Peticionario | CC-2017-457 | Certiorari |

Voto disidente emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 12 de febrero de 2018.

Lamentablemente, hoy la Mayoría de este Tribunal se niega a reconocer el desarrollo de la doctrina de culpabilidad atenuada según esbozada y reiterada por el Tribunal Supremo de los Estados Unidos en Roper v. Simmons, infra, Graham v. Florida, infra, Miller v. Alabama, infra, y Montgomery v. Lousiana, infra. De esa forma, se resisten a aplicar el mandato claro de la jurisprudencia federal, en cuanto a la amplitud de la protección constitucional contra castigos crueles e inusitados a menores de edad procesados como adultos. Específicamente, rechazan la oportunidad de resolver que el castigo del encarcelamiento perpetuo a menores de edad --sin posibilidad de libertad bajo palabra-- violenta el principio de proporcionalidad ínsito en la Octava Enmienda de la Constitución de los Estados Unidos y la Sección 12 del Artículo II de la Constitución de Puerto Rico. Emdas. VIII, Const. EE. UU., LPRA, Tomo 1; Art II, Sec. 12, Const. ELA, LPRA, Tomo 1. Es decir, hoy

perdimos la ocasión de pasar juicio sobre la constitucionalidad de una sentencia que condena a un menor de edad juzgado como adulto a **372** años de prisión.

Así, el proceder mayoritario, de no atender el recurso de epígrafe, permite que subsistan los efectos de estatutos penales que proveen un tratamiento indistinto y autómata en torno al castigo impuesto a personas convictas. Ello, sin consideración alguna a las diferencias psicosociales inherentes a la minoría de edad que debe sopesar la autoridad sentenciadora al momento de ponderar la imposición de castigos permanentes a menores de edad procesados como adultos, según el claro mandato del Tribunal Supremo federal.

Por consiguiente, la pasividad con la que la Mayoría despacha este asunto conduce a generalizar la idea de que todo menor convicto por delitos graves será --por el resto de su vida-- una persona incorregible, que debe permanecer encarcelado, que no es merecedor de la oportunidad de demostrar que ha madurado y que no es digno de volver a la libre comunidad. Con ello, no sólo se ignora la política constitucional tendente a la rehabilitación del convicto, sino que además, se relega nuestra obligación de interpretar la Constitución de Puerto Rico de forma tal que provea, **como mínimo**, la misma protección reconocida por el Tribunal Supremo federal en la interpretación de la Constitución de los Estados Unidos.

Toda vez que al no atender el recurso de autos la Mayoría de este Tribunal opta por un rol de observadores pasivos, ante una sentencia que a todas luces violenta la protección contra castigos crueles e inusitados, según interpretada por el máximo foro federal, **disiento**.

Para contextualizar mi postura, procedo a exponer el marco fáctico y procesal que dio paso al recurso de epígrafe.

## I

En el año 1993, John Álvarez Chevalier (Álvarez Chevalier o peticionario), con apenas diecisiete años de edad, fue condenado a cumplir 372 años de cárcel. Fue encontrado culpable por varios delitos tras acompañar en una noche a un grupo de amigos jóvenes quienes hurtaron varios vehículos, asaltaron varios negocios y dos de ellos cometieron asesinato.[1] Por esos hechos, el Tribunal de Primera Instancia condenó al peticionario a cumplir las penas impuestas de forma consecutiva. Por tanto, fue sentenciado a una suma total de 372 años de cárcel.

Así las cosas, el 16 de septiembre de 2016, tras pasar más de veinticuatro años encarcelado, Álvarez Chevalier presentó ante el Tribunal de Primera Instancia una *Moción solicitando corrección de sentencia*. En ésta, adujo que el desarrollo jurisprudencial del Tribunal

---

[1]Específicamente, se encontró culpable a John Álvarez Chevalier por dos cargos de asesinato; cinco cargos de robo; tentativa de robo; dos cargos de conspiración, y violación de los Arts. 8a, 5, 6, 6a y 8 de la Ley de Armas, Ley Núm. 117 de 17 de enero de 1951, según enmendada.

Supremo de los Estados Unidos en materia de justicia juvenil ameritaba la reducción de la pena de 372 años que actualmente extingue en presidio. Especificó que la doctrina de culpabilidad atenuada desarrollada por el máximo foro federal en Roper v. Simmons, 543 US 551 (2005); Graham v. Florida, 560 US 48 (2010); Miller v. Alabama, 567 US 460 (2012), y Montgomery v. Lousiana, 136 S.Ct. 718 (2016), impedía la imposición de una cadena perpetua a un menor de edad juzgado como adulto. Por tanto, argumentó que la exorbitante cuantía de 372 años que se supone cumpla encarcelado, causa que tenga que cumplir 97 años de prisión antes de ser elegible al beneficio de libertad bajo palabra. De esa forma, el peticionario sostuvo que la pena que se le impuso es igual a una cadena perpetua *de facto* vedada por el Tribunal Supremo federal en Miller v. Alabama, supra, toda vez que, con toda probabilidad, morirá antes de ser elegible para solicitar el beneficio de libertad bajo palabra. Así, solicitó al Tribunal de Primera Instancia que modificara su sentencia para permitirle extinguir las penas de manera concurrente, y reducir de esa manera, el tiempo mandatorio de encarcelamiento previo a ser elegible para el beneficio de libertad bajo palabra.

Oportunamente, el Ministerio Publico compareció en oposición a la solicitud del peticionario. Arguyó que, conforme a la doctrina de cosa juzgada, el foro primario no podía conceder el remedio que Álvarez Chevalier solicitaba, puesto que este Tribunal confirmó la

constitucionalidad de las penas en controversia mediante la sentencia emitida en 1995.

Luego de celebrar una vista argumentativa, el Tribunal de Primera Instancia declaró sin lugar la petición de Álvarez Chevalier. Ello pues, entendió que, dado que el ordenamiento vigente al momento de los hechos permitía la imposición de penas consecutivas, la sentencia no adolecía de ilegalidad alguna. En síntesis, el foro primario acogió los argumentos que presentó el Ministerio Público y se declaró sin jurisdicción para modificar la sentencia.

Inconforme con esta determinación, el peticionario acudió ante el Tribunal de Apelaciones vía recurso de *certiorari* solicitando la revocación de la Resolución. En esencia, reprodujo los planteamientos esbozados ante el Tribunal de Primera Instancia. Ponderados los planteamientos de ambas partes, el foro apelativo intermedio confirmó la determinación del foro primario tras razonar que en Graham v. Florida, supra, y su progenie se estableció que la Octava Enmienda prohíbe que se castigue a un menor sin posibilidad de salir en libertad bajo palabra, **únicamente cuando el delito por el cual se castiga no implica asesinato**. De esta forma, concluyó que la facultad para determinar en qué casos procede limitar o excluir a las personas convictas del privilegio de libertad bajo palabra pertenece a la rama legislativa y no a los tribunales.

En disconformidad con tal proceder, Álvarez Chevalier compareció ante nos y solicita que revoquemos la determinación del Tribunal de Apelaciones. A tales efectos, aduce que, conforme a la jurisprudencia federal más reciente, procede devolver el caso al Tribunal de Primera Instancia para que modifique su sentencia y disponga para el cumplimiento concurrente de las penas. En la alternativa, solicita que ordenemos la celebración de una vista en la que se considere su minoría de edad a la fecha de los hechos conforme a los factores esbozados en Miller v. Alabama, supra. En ese sentido, el peticionario señala que el tribunal apelativo intermedio erró al no aplicar las normas pautadas por el Tribunal Supremo de los Estados Unidos y al concluir que la doctrina de culpabilidad atenuada no se extiende a casos en que la conducta delictiva constituye asesinato.

Ante este panorama, la Mayoría de este tribunal decide no expedir el recurso de *certiorari* presentado por Álvarez Chevalier. Ello, a pesar de que la normativa elaborada por el máximo foro federal sostiene que, cuando un menor es sentenciado, la Constitución le garantiza al ciudadano el derecho a una oportunidad para demostrar que se ha rehabilitado y merece ser puesto en libertad.

Ante este cuadro fáctico y procesal, procedo a exponer los fundamentos legales y jurídicos por los cuales me veo obligado a disentir del proceder mayoritario.

## II

La Sección 12 de la Carta de Derechos de la Constitución de Puerto Rico, así como la Octava Enmienda de la Constitución de los Estados Unidos vedan la imposición de castigos crueles e inusitados a los ciudadanos. Const. ELA, supra; Const. EE.UU., supra. Esta protección individual limita el poder punitivo que posee el Estado, asegurando que la pena que enfrentará la persona convicta por conducta delictiva estará debidamente proporcional con la gravedad del delito. Véase, Graham v. Florida, supra, pág. 59; 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 3186 (2003).

Al respecto, este Tribunal ha señalado que al examinar un cuestionamiento de proporcionalidad es necesario hacer un balance que, entre otras cosas, incluya: (1) el daño causado a la víctima y a la sociedad, (2) la culpabilidad o la actitud mental del acusado al perpetrar los hechos, y (3) si el convicto tendrá oportunidad de disfrutar del beneficio de libertad bajo palabra. Pueblo v. Echevarría Rodríguez I, 128 DPR 299, 373 (1991). Véase, además, Solem v. Helm, 463 US 277 (1983).

Asimismo, este Tribunal ha advertido que el Artículo II de la Constitución de Puerto Rico requiere la imposición de sentencias que no sean arbitrarias, así como "la pena menos restrictiva de la libertad para

lograr el fin por el cual se impone". <u>Pueblo v. Pérez Zayas</u>, 116 DPR 197, 201 (1985) (*Per Curiam*).

**III**

**A**

De igual forma, desde el 2005 el Tribunal Supremo de los Estados Unidos ha resuelto que la Octava Enmienda impone límites más rigurosos a las ramas judiciales y políticas cuando se trata de la imposición de penas irrevocables a menores de edad juzgados como adultos por conducta delictiva. En consecuencia, el máximo foro federal ha pautado que algunos castigos pueden considerarse desproporcionales, y por tanto, "inusitados" al amparo de la Octava Enmienda si se imponen a un menor de edad juzgado como adulto. Es decir, que algunos castigos pueden ser válidos para conducta delictiva durante la adultez, mas no así en la minoridad de edad. <u>Véase</u>, <u>Miller v. Alabama</u>, supra, pág. 471.[2]

Esta distinción comenzó en <u>Roper v. Simmons</u>, supra. En esa ocasión, el Tribunal Supremo de los Estados Unidos resolvió que la protección contenida en la Octava Enmienda **prohíbe absolutamente la imposición de la pena**

---

[2]En cuanto a la diferencia de las penas entre adultos y menores de edad, el Tribunal Supremo federal ha indicado, lo siguiente: "The 'foundation stone' for *Miller's* analysis was this Court's line of precedent holding **certain punishments disproportionate when applied to juveniles**". <u>Montgomery v. Louisiana</u>, 136 S.Ct. 718, 732 (2016) (énfasis suplido). Además, señaló lo siguiente, a saber: "*Miller* took as its starting premise the principle established in *Roper* and *Graham* that 'children are constitutionally different from adults for purpose of sentencing'". <u>Íd.</u>, pág. 733 (<u>citando a Miller v. Alabama</u>, 567 US 460, 471 (2012)).

**capital a un menor de dieciocho años procesado como adulto**. Íd., pág. 575. Fundamentó su conclusión en tres diferencias psicosociales inherentes a la adolescencia que atenúan la culpabilidad moral atribuible al menor. Íd., pág. 569. Veamos cuáles son.

La primera diferencia reconocida por el Tribunal es que durante la minoría de edad la persona aún es inmadura y su sentido de responsabilidad no está completamente desarrollado. Por ello, los adolescentes tienden a realizar actos arriesgados, sin ulterior consideración por las consecuencias de su conducta. A su vez, sus decisiones no son producto de una reflexión ponderada, sino más bien, de su impulsividad. Íd.

La segunda diferencia es que los menores son más vulnerables a influencias negativas externas y a las presiones de grupo. En ocasiones, estas influencias provienen de su propio círculo familiar o de un entorno inmediato que el adolescente no controla, ni tiene autonomía suficiente como para abstraerse de ese tipo de ambiente. Íd., págs. 569-570.

La tercera y última diferencia reconocida por el Tribunal es que el carácter de la persona, durante la minoridad, no se ha desarrollado por completo. Por ende, los rasgos de personalidad que exhibe durante la misma son transitorios. De esta manera, su carácter es un factor cuestionable para juzgar qué tipo de individuo será una vez alcance la adultez. De igual modo, la conducta delictiva en la que éste incurra --por sí sola-

- resulta poco confiable para concluir que el adolescente es una persona irremediablemente depravada. Por el contrario, la misma transitoriedad hace que estos sean más susceptibles al cambio, aumentado así sus probabilidades de una rehabilitación exitosa. Íd., pág. 570.[3]

Conforme a esas tres diferencias, el máximo foro federal dispuso que hasta para los psicólogos expertos es difícil diferenciar entre los jóvenes que cometen crímenes que son producto de su inmadurez y los jóvenes que cometen crímenes que reflejan corrupción irreparable. Peor aún, les es difícil diagnosticar conducta antisocial, psicópatas o sociópatas, entre otros. Por tanto, concluyó que no se debería solicitar a los jurados que consideren si un menor es merecedor de la pena capital. Además, razonó que esas diferencias hacen sospechosa cualquier conclusión sobre considerar a un menor como uno de los peores delincuentes. Y es que ese comportamiento inmaduro e irresponsable de los

---

[3]El Tribunal Supremo de los Estados Unidos, además, reiteró lo afirmado en Thompson v. Oklahoma, 487 US 815 (1988), en cuanto a que los jóvenes no tienen los privilegios y responsabilidades de los adultos. Ello porque los jóvenes tienen inexperiencia de vida, menos educación y menos inteligencia; lo que hace que se dejen llevar por sus emociones y por presiones de los adultos. Por tanto, no deben ser sentenciados como estos últimos. Propiamente, dispuso como sigue: "[T]he Thompson plurality stressed that "[t]he reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult". Roper v. Simmons, 543 US 551, 561 (2005) (citando a Thompson v. Oklahoma, supra, pág. 835).

menores significa que su conducta no puede ser reprensible como la de un adulto. Íd., pág. 570.

Con este trasfondo diferencial, el Tribunal Supremo federal resaltó la severidad de la pena capital y reiteró que la Octava Enmienda permite la imposición de tal pena únicamente cuando se impone a quienes cometieron los más repudiables delitos de forma alevosa y premeditada. Así, señaló que cuando se compara la severidad de la pena capital y los fines sociales que esta persigue con la culpabilidad atenuada de los adolescentes, la desproporcionalidad del castigo es evidente. Por tanto, el máximo foro federal explicó que el fin social retributivo presupone una relación directa entre el castigo y la culpabilidad del convicto. En ese sentido, en el caso particular de los menores, la desproporción de la pena capital resulta aparente, toda vez que permitiría la imposición del castigo más severo para quienes delinquen con una culpabilidad atenuada. Íd., pág. 571.

De igual forma, el Tribunal descartó que la pena capital impuesta al menor de edad sirva para el fin social de disuadir a potenciales ofensores. Teniendo en cuenta que la conducta del menor es producto de su impetuosidad e irreflexión, concluyó que resulta improbable que los posibles ofensores adolescentes consideren la pena capital como una posible consecuencia de su conducta. Íd., págs. 571-572.

**B**

A raíz de este importante precedente, cinco años más tarde, el Tribunal Supremo federal aplicó el mismo razonamiento en Graham v. Florida, supra. Luego de repasar las diferencias psicosociales inherentes a la adolescencia identificadas en Roper v. Simmons, supra, el Tribunal amplió la doctrina de culpabilidad atenuada al establecer la regla categórica de que la Octava Enmienda **prohíbe el castigo de encarcelamiento perpetuo --sin posibilidad de libertad bajo palabra--** por delitos que no sean homicidios cometidos durante la minoría de edad. Graham v. Florida, supra, págs. 61-62. Apoyaron la decisión en las similitudes entre el encarcelamiento perpetuo y la pena capital como castigos para un adolescente. Si bien la cárcel de por vida no "mata" al menor, sí implica una privación del disfrute de su libertad por el resto de su vida. De igual forma, razonó que ambos castigos privan al adolescente de toda esperanza de rehabilitación, sin importar la buena conducta que tenga ni su mejoría en el carácter. Íd., págs. 69-70.[4] Con ello en mente, el Tribunal analizó los fines sociales del encarcelamiento perpetuo, y, por las

---

[4]El máximo foro federal destacó que el encarcelamiento sin libertad a prueba es la segunda sentencia más severa permitida por ley. Graham v. Florida, 560 US 48, 69 (2012). Sin embargo, en Puerto Rico al estar prohibida la repudiable pena de muerte por la Constitución, el encarcelamiento sin libertad a prueba constituye la pena más severa.

Por otro lado, el Tribunal destacó que el encarcelamiento sin libertad a prueba tiene el efecto de ser mucho más grave para los jóvenes. Ello, ya que al fin de cuenta, los jóvenes pasarán más porciento de su vida en prisión que los adultos. Íd., pág. 71.

mismas razones esbozadas en Roper v. Simmons, supra, rechazó que la retribución y la disuasión fuesen justificación suficiente para encarcelar de por vida a un menor que no cometió asesinato. Graham v. Florida, supra, págs. 71-72.

Por otro lado, el foro supremo federal en esa ocasión se adentró a discutir los otros propósitos sociales del castigo, a saber, la incapacitación y la rehabilitación. En ese sentido, reiteró que el castigo debe servir a un fin social legítimo, ya que, de lo contrario, no guardaría la proporción que exige la Octava Enmienda. Íd., pág. 71.

En torno a la incapacitación, rechazó que la seguridad de la comunidad sea justificación suficiente para encarcelar a perpetuidad a un menor de edad que no comete asesinato. Íd., pág. 72. En cuanto a la rehabilitación, el Tribunal expresó que una determinación acerca de la incorregibilidad del ofensor adolescente resulta inherentemente cuestionable. Ello pues, reitera lo dicho en Roper v. Simmons, supra, en que particularmente ni los peritos en la materia realizan ese tipo de juicio o análisis, toda vez que entienden que es incorrecto calificar de manera permanente la personalidad de un individuo mientras se encuentra en esa etapa temprana de la vida, es decir, la adolescencia. En otras palabras, "la incorregibilidad y la juventud son incompatibles". Íd., pág. 73 (citando a

_Workman v. Commonwealth_, 429 S.W.2d 374, 378 (Ky. App. 1968)) (traducción suplida).[5]

Por consiguiente, el Tribunal Supremo de los Estados Unidos **resolvió, en síntesis, que el encarcelamiento perpetuo de un menor de edad, como medida cautelar para proteger la seguridad comunitaria, es un castigo desproporcional cuando se impone en respuesta a delitos no-homicidas.**

Para el Tribunal esta norma categórica ("_bright-line rule_") pautada obedece al riesgo de que, en su ausencia, continúe la imposición de castigos irrevocables a personas que --por razón de su edad-- se les atribuye una culpabilidad atenuada. Íd., págs. 72-73. Para prevenir tal situación, el máximo foro federal señaló que el Estado viene obligado a **darle una oportunidad significativa para salir en libertad en el futuro, si este demuestra que, a base de su madurez y rehabilitación, merece ser puesto en libertad.** Íd., pág. 75.[6]

_____

[5]Tal aseveración fue reiterada en _Miller v. Alabama_, supra, págs. 472-473: "Similarly, incapacitation could not support the life-without-parole sentence in _Graham_: Deciding that a 'juvenile offender forever will be a danger to society' would require 'mak[ing] a judgment that [he] is incorrigible'—but 'incorrigibility is inconsistent with youth'". (citando a _Graham v. Florida_, supra, pág. 73).

[6]Específicamente, la determinación del Tribunal fue la siguiente:

A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, **is give defendants like Graham some meaningful opportunity to obtain**

Es importante destacar que el Tribunal reiteró la diferencia entre los menores de edad y los adultos. Sostuvo lo dicho en Roper v. Simmons, supra, en cuanto a que los jóvenes tienen menos culpabilidad, por lo cual no son merecedores de las penas más severas. Íd., pág. 68. Además, igualmente sostuvo las diferencias reconocidas entre los jóvenes que se comportan según su inmadurez y que pueden cambiar, y los jóvenes que son incorregibles. Íd., pág. 77.[7]

**C**

Dos años después el Tribunal Supremo de Estados Unidos amplió nuevamente la protección constitucional de los menores juzgados como adultos empleando el razonamiento de la culpabilidad atenuada.

---

**release based on demonstrated maturity and rehabilitation.** It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society. Graham v. Florida, supra, pág. 75 (énfasis suplido).

[7]Cabe resaltar que una de las diferencias que la Opinión establece entre los adultos y los jóvenes, es la limitación de estos últimos en el entendimiento de los procesos criminales y cómo pueden ayudar en su defensa. Íd., pág. 78.

Específicamente, en <u>Miller v. Alabama</u>, supra, el máximo foro federal invalidó sendas cadenas perpetuas impuestas a dos menores **convictos por asesinato estatutario**. En esa ocasión, la controversia se circunscribió a la constitucionalidad de la legislación de Alabama y Arkansas que fijaban la misma pena, de forma automática, para toda persona convicta por asesinato.

Particularmente, el Tribunal estableció que las sentencias de cadena perpetua automáticas impuestas a los menores encontrados culpables de asesinato violentaban la Octava Enmienda, porque, al fijar una misma pena para todos, el estatuto impedía que el juzgador considerara las características atenuantes de la culpabilidad del menor para disminuir la sanción a imponerse. <u>Íd.</u>, pág. 476. Es decir, "that mandatory life without parole for those under the age of 18 at time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments'". <u>Íd.</u>, pág. 465. Así, concluyó que este esquema legislativo violentaba los principios que subyacen las decisiones en <u>Roper v. Simmons,</u> supra, y <u>Graham v. Florida</u>, supra, esto es, que el castigo más severo autorizado por el ordenamiento no procede indistinta y automáticamente contra los menores. <u>Miller v. Alabama</u>, supra, pág. 474.[8] En ese sentido,

---

[8]Propiamente, el Tribunal Supremo federal dispuso sobre esa diferencia en los menores de edad, de la siguiente manera:

> But the mandatory penalty schemes at issue here prevent the sentencer from taking account of these central considerations. By removing

indicó que antes de imponer una sentencia de por vida sin posibilidad de libertad a prueba a menores sentenciados por delitos homicidas, el tribunal debe tomar en consideración de forma individualizada las circunstancias atenuantes como la edad y sus características. Es decir, pautó una norma a tomar caso a caso. Más aún, reiteró la distinción entre la conducta criminal por inmadurez transitoria y la conducta que refleja corrupción irreparable. De tal manera, señaló que al tomar en consideración las características de los menores de edad, la **pena más severa** debería ser aplicada a los jóvenes en circunstancias excepcionales.[9]

---

youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender. That contravenes *Graham's* (and also *Roper's*) foundational principle: **that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children**. Miller v. Alabama, supra, pág. 474 (énfasis suplido).

[9]Particularmente, el máximo foro judicial dispuso de la siguiente forma:

But given all we have said in *Roper, Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to **this harshest possible penalty will be uncommon**. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption". Miller v. Alabama, supra, págs. 479-480 (énfasis suplido) (citando a Roper v. Simmons, supra, pág. 573; Graham v. Florida, supra, pág. 68).

Por otro lado, en esa ocasión, el Tribunal Supremo federal, precisó ejemplos de los criterios que el juzgador debe tener en cuenta al momento de sentenciar al menor de edad procesado como adulto. Específicamente, señaló los siguientes: (1) la edad cronológica del menor; (2) los rasgos de su carácter; (3) su nivel de madurez; (4) si tiende a incurrir en conducta de manera irreflexiva, sin ponderar las consecuencias de la misma; (5) su historial familiar; (6) la funcionalidad del hogar en el cual se desarrolla; (7) su grado de participación en el delito, y (8) sus probabilidades de rehabilitación. Íd. págs. 477-478.

**D**

Por último, tan recientemente como hace dos años, el Tribunal Supremo de los Estados Unidos nuevamente aplicó en Montgomery v. Louisiana, supra, la doctrina de culpabilidad atenuada discutida. Allí, explicó que Miller v. Alabama, supra, reconoció un derecho constitucional de naturaleza sustantiva que, por virtud de la Cláusula de Supremacía, **aplica de forma retroactiva a los procedimientos colaterales post-sentencia independientemente de que la sentencia sea final y firme.** Montgomery v. Louisiana, supra, págs. 731-732. Concretamente, el Tribunal señaló que todo menor sentenciado a cadena perpetua sin posibilidad de libertad bajo palabra tiene un derecho de estirpe constitucional a no permanecer encarcelado el resto de

su vida.[10] Ello pues, la protección contra castigos crueles e inusitados permite la encarcelación perpetua por un asesinato cometido durante la minoridad, **únicamente** en situaciones **"excepcionales"** en las que el delito refleja que el menor es irremediablemente **"incorregible"**. Íd., págs. 734-735. Por tanto, los menores en los cuales los crímenes reflejen una transitoria inmadurez, no deben ser condenados a cadena perpetua. A esos efectos, el Tribunal Supremo federal, citando a Miller v. Alabama, supra, dispuso específicamente lo siguiente:

> The Court recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of "children's diminished culpability and heightened capacity for change," Miller made clear that "appropriate occasions for sentencing juveniles **to his harshest possible penalty will be uncommon"**.

---

[10]Cabe señalar que el Tribunal Supremo de los Estados Unidos reconoció que en Miller v. Alabama, supra, se determinó que los tribunales deben considerar, al momento de sentenciar, la edad y las características concomitantes de la persona. No obstante, enfatizó que en esa Opinión se estableció la norma sustantiva de que el encarcelamiento sin libertad condicional es excesiva para los menores de edad en los cuales sus crímenes demuestren inmadurez transitoria. Específicamente dispuso lo siguiente:

> The procedure *Miller* prescribes is no different. A hearing where "youth and its attendant characteristics" are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. **The hearing does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.** Montgomery v. Louisiana, supra, pág. 735 (énfasis suplido) (cita omitida).

*Miller*, then, did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established **that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth."** Even if a court considers a child's age before sentencing him or her to a lifetime in prison, **that sentence still violates the Eighth Amendment for a child whose crime reflects "'unfortunate yet transient immaturity.'"**. Because *Miller* determined that sentencing a child to life without parole is excessive for all but "'the rare juvenile offender whose crime reflects irreparable corruption,'" **it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders whose crimes reflect the transient immaturity of youth.** Íd., págs. 733-734 (énfasis suplido) (citas omitidas).

Precisa resaltar dos consecuencias que surgen de lo anterior. En Montgomery v. Lousiana, supra, **expresamente se señaló que los tribunales estatales están obligados a aplicar retroactivamente la norma pautada en Miller v. Alabama, supra.** Además, se dispuso que los estados carecen de autoridad para castigar a un menor con la pena de encarcelamiento perpetuo si su conducta fue producto de la inmadurez transitoria que caracteriza a la persona durante la minoridad de edad. Íd., págs. 729-730. Ante ese cuadro, los tribunales, incluyendo los estatales como Puerto Rico, están obligados a imprimirle efectividad al derecho sustantivo reconocido en esa línea jurisprudencial. Íd., págs. 731-732.[11]

---

[11]Es importante señalar que el Tribunal Supremo federal reconoció que con la norma de Miller v. Alabama, supra, muchas de las sentencias aplicadas a jóvenes podrían ser inconstitucionales. ("*Miller*'s conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in

A los efectos de subsanar retroactivamente la legalidad de aquellas sentencias dictadas en contravención a <u>Miller v. Alabama</u>, supra, el máximo foro federal sugirió dos alternativas. Primero, la celebración de una vista donde se evalúen los factores concomitantes a la minoridad de edad que atenúan la culpabilidad del menor. <u>Montgomery v. Louisiana</u>, supra, págs. 735-736. Ahora bien, este nuevo precedente no requiere la celebración de una vista para "resentenciar" al convicto en todos los casos. Reconociendo los costos que conllevaría esta alternativa, el Tribunal, como segunda alternativa, sugirió que los estados podrían subsanar una sentencia cuyos términos violenten la norma pautada en <u>Miller v. Alabama</u>, supra, confiriéndole al convicto **"la posibilidad de libertad bajo palabra"**. <u>Montgomery v. Louisiana</u>, supra, pág. 736 (énfasis y traducción suplida).[12]

---

violation of the Constitution". <u>Montgomery v. Louisiana</u>, supra, pág. 736).

[12]Al respecto, las expresiones del Tribunal Supremo fueron las siguientes:

> Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity —and who have since matured— will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment. <u>Íd.</u> (cita omitida).

Examinado el derecho aplicable, procedo a exponer las razones de mi disenso.

**IV**

En este caso, la controversia en los méritos se circunscribía a determinar si este Tribunal tenía la obligación de reconocer y adoptar las normas establecidas por el Tribunal Supremo federal con respecto al modo de sentenciar ofensores juveniles en armonía y preservación con las disposiciones de la Octava Enmienda que prohíbe los castigos crueles e inusitados. Además, debíamos resolver si el Tribunal de Apelaciones erró al concluir que según Graham v. Florida, supra, y su progenie se estableció que la Octava Enmienda prohíbe que se castigue a un menor sin posibilidad de salir en libertad bajo palabra, únicamente cuando el delito por el cual se castiga no implica asesinato. Por último, si en el caso de epígrafe le aplicaba retroactivamente lo impuesto por el Tribunal Supremo federal en Miller v. Alabama, supra, según Montgomery v. Louisiana, supra. Ello a pesar que este Tribunal validó la sentencia impuesta en el 1995. Examinada la petición de *certiorari*, a la luz del derecho aplicable, concluyo que el Tribunal de Apelaciones incidió en los errores señalados. Veamos.

En primer término, después de examinar la petición de *certiorari* y la jurisprudencia federal, resulta forzoso concluir que el foro apelativo intermedio erró al señalar que Graham v. Florida, supra, y su progenie

se limitan a los casos en los que el menor **no** resultó

convicto por asesinato. El Tribunal Supremo de los

Estados Unidos expresamente rechazó ese planteamiento en

Miller v. Alabama, supra, al señalar lo siguiente:

> *Graham* concluded from this analysis that life-without-parole sentences, like capital punishment, may violate the Eighth Amendment when imposed on children. To be sure, *Graham*'s flat ban on life without parole applied only to nonhomicide crimes, and the Court took care to distinguish those offenses from murder, based on both moral culpability and consequential harm. **But none of what it said about children--about their distinctive (and transitory) mental traits and environmental vulnerabilities--is crime-specific.** Those features are evident in the same way, and to the same degree, when (as in both cases here) a botched robbery turns into a killing. **So *Graham*'s reasoning implicates *any* life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses.** Miller v. Alabama, supra, pág. 473 (énfasis suplido).[13]

Por tanto, la línea jurisprudencial discutida nos

obligaba a expedir el recurso ante nos. De hecho, la

---

[13]Similar reconocimiento hizo el máximo foro judicial federal en Montgomery v. Louisiana, supra:

> For that reason, *Miller* is no less substantive than are *Roper* and *Graham*. **Before *Miller*, every juvenile convicted of a homicide offense could be sentenced to life without parole. After *Miller*, it will be the rare juvenile offender who can receive that same sentence.** The only difference between *Roper* and *Graham*, on the one hand, and *Miller*, on the other hand, is that *Miller* drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption. The fact that life without parole could be a proportionate sentence for the latter kind of juvenile offender does not mean that all other children imprisoned under a disproportionate sentence have not suffered the deprivation of a substantive right. Íd., pág. 734.

situación de Álvarez Chevalier es, en varios aspectos, similar a la del menor Kuntrell Jackson (Jackson), cuya sentencia original fue **revocada** por el máximo foro federal en <u>Miller v. Alabama</u>, supra. Tanto Jackson como Álvarez Chevalier fueron convictos por asesinato estatutario cometido durante un robo en el que se utilizó un arma de fuego. Ni Jackson ni Álvarez Chevalier fueron los que utilizaron el arma de fuego que culminó con las muertes por las cuales resultaron convictos, y ambos fueron sentenciados como cómplices en el delito de asesinato.

De igual forma, en <u>Montgomery v. Louisiana</u>, supra, se aplicó la doctrina a un caso de asesinato. Allí, el Tribunal Supremo federal ordenó que se aplicara de forma retroactiva la norma sentada en <u>Miller v. Alabama</u>, supra, para evaluar la proporcionalidad de una cadena perpetua **impuesta a un confinado que <u>asesinó</u> a un policía** cuando tenía dieciséis años. En ese sentido, el foro apelativo intermedio erró en el caso de epígrafe al limitarse a expresar que <u>Graham v. Florida</u>, supra, y su progenie se limitan a casos en que el menor **no** cometió asesinato.

Según discutido, en <u>Miller v. Alabama</u>, supra, y <u>Montgomery v. Lousiana</u>, supra, se reconoció un derecho constitucional a favor de todo menor juzgado como adulto por el delito de asesinato. En específico, todo menor cuya conducta delictiva responda a la inmadurez transitoria inherente a esa etapa tiene derecho a no

permanecer encarcelado a perpetuidad. No menos relevante al caso ante nos, el estado tiene el deber de aplicar esta norma sustantiva-constitucional retroactivamente, incluso en procesos colaterales post-sentencia.

Ante ese cuadro, tanto el Tribunal de Primera Instancia, el foro apelativo intermedio y este Tribunal **venían obligados** a reconocer el efecto retroactivo de esa doctrina, independientemente de que la sentencia de Álvarez Chevalier advino final y firme. Por ello, es forzoso concluir que el Tribunal de Apelaciones **erró** al razonar que carecía de jurisdicción para revisar la sentencia de este caso.

Por otro lado, debo señalar que <u>Montgomery v. Louisiana</u>, supra, y <u>Miller v. Alabama</u>, supra, se centran en un asunto, a saber: la imposición del castigo al menor de edad juzgado como adulto tiene que responder a un análisis individualizado, con especial atención a su edad y las características que atenúan su culpabilidad. En el caso ante nos, después de examinar el expediente, no hay duda de que el foro primario que sentenció a Álvarez Chevalier no consideró su edad como una característica constitucionalmente relevante al momento de condenarlo a 372 de años de encarcelamiento. Ello pues, concluyó que, a la luz de los hechos del caso, la manera de hacer justicia era condenándolo a cumplir las penas consecutivamente. Al examinar la sentencia en este caso, puedo concluir que el tribunal sentenciador no consideró, ni tampoco tuvo el beneficio de contar con

todos los criterios pautados retroactivamente en la jurisprudencia federal analizada, a saber: (1) la edad cronológica de Álvarez Chevalier; (2) los rasgos de su carácter; (3) su nivel de madurez; (4) si a menudo actuaba irreflexivamente sin ponderar las consecuencias; (5) su historial familiar; (6) la funcionalidad del hogar donde se desarrolló; (7) particularmente relevante en el caso de autos, su participación en los delitos, y (8) sus probabilidades de rehabilitación. Véase, Miller v. Alabama, págs. 477-478. Por tanto, el análisis de estos criterios exigía la devolución al foro primario para que dilucidara si debía concederse al peticionario el remedio de presentar una solicitud para quedar en libertad bajo palabra.

La pena impuesta en este caso es el castigo más severo que autoriza nuestro ordenamiento, y su extensión e imposición a un menor de edad debe mirarse con recelo. Como resaltó el Tribunal Supremo federal, "teniendo en cuenta la culpabilidad disminuida del menor de edad y su alta capacidad para cambiar, las situaciones en que será apropiada la pena de encarcelamiento perpetuo a un menor serán infrecuentes". Miller v. Alabama, supra, págs. 479-480 (traducción suplida). Véase, además, Graham v. Florida, supra, págs. 73-74. Es decir, encarcelar a un menor de edad durante toda su vida, de ordinario, es una pena desproporcional. La excepción es que se determine que el menor es irremediablemente incorregible; y ese hecho es reconocido por el Tribunal como uno sumamente

excepcional. De lo contrario, el castigo resulta desproporcional y, por ende, violenta la protección contra castigos crueles e inusitados.[14]

La jurisprudencia es prístina: el deber de los Tribunales, antes de sentenciar al menor juzgado como adulto, es sopesar las características inherentes a la minoridad que atenúan la pena y cómo estas militan en contra de un castigo de naturaleza irrevocable. Miller v. Alabama, supra, 482-483. Las sentencias que el máximo foro federal revocó en Montgomery v. Louisiana, supra, y en Miller v. Alabama, supra, versaban sobre estatutos que, (1) ordenaban la imposición de cadena perpetua y, (2) el convicto no tenía la posibilidad de libertad bajo palabra. Como hemos visto, en igual posición se encuentra el peticionario, toda vez que la pena de 372 años de reclusión carcelaria causa que este sea inelegible para disfrutar del beneficio de libertad bajo palabra. La pena total impuesta a Álvarez Chevalier

---

[14]En ese sentido, el Tribunal Supremo federal ha sido enfático en dictaminar lo siguiente, a saber:

> As a corollary to a child's lesser culpability, *Miller* recognized that "the distinctive attributes of youth diminish the penological justifications" for imposing life without parole on juvenile offenders. Íd., supra, pág. 733 (citando a Miller v. Alabama, supra, pág. 472).

Así tambien, ha afirmado que el "Court's holding in *Miller* that mandaroty life-without-parole sentences for children "pos[e] too great a risk of disproportionate punishment". Íd. (citando a Miller v. Alabama, supra, pág. 479).

causa que este pierda toda posibilidad real a tener la oportunidad para demostrar que se ha rehabilitado.[15]

Ello es así, porque la Ley orgánica de la Junta de Libertad Bajo Palabra vigente al momento de los hechos, disponía que el referido ente administrativo tendría jurisdicción para evaluar una solicitud de libertad supervisada cuando el confinado cumpliere la mitad de su sentencia fija. De otra parte, si la persona había sido confinada por el delito de asesinato, esta tenía que cumplir un término fijo de veinticinco años naturales, si es adulto, y diez años naturales si se trataba de un menor juzgado como adulto. 4 LPRA sec. 1503.

El problema, como bien señala el peticionario, es que a causa de la interacción entre la Ley orgánica de la Junta de Libertad bajo Palabra y el Código Penal entonces vigente, este tendría que cumplir 97 años en prisión antes de tener la oportunidad para demostrar que su madurez y rehabilitación lo hacen merecedor de unos años en libertad. Graham v. Florida, supra, págs, 72-73. Ello es, la mitad de la pena fija de 174 años por los delitos que no constituyen asesinato más diez años por cada uno de los asesinatos. Por ello, Álvarez Chevalier

---

[15]Como bien señaló el Tribunal Supremo federal:

> In light of what this Court has said in *Roper, Graham,* and *Miller* about how children are constitutionally different from adults in their level of culpability, however, **prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored.** Íd., pág. 736-737.

arguye que su sentencia constituye una cadena perpetua *de facto*. Opino que el peticionario tiene razón.

De igual forma, los tribunales a nivel estatal y federal ya han atendido controversias similares al tipo de sentencias que nos ocupa.[16] Existe una clara tendencia de que este tipo de castigo no se distingue del tipo de pena "obligatoria" que violenta la prohibición de castigos crueles e inusitados, según la jurisprudencia federal. A manera de ejemplo, los tribunales de Florida,[17] Washington,[18] Illinois,[19]

---

[16]A nivel federal, véase Budder v. Addison, 851 F.3d 1047 (10th Cir. 2017) (revoca la sentencia del joven de dieciséis años que fue sentenciado a tres condenas de por vida y veinte años adicionales, todas de forma consecutivas, es decir, para un total de 155 años; por tanto tendría posibilidad de libertad bajo palabra después de 131.75 años; ordena resentenciar); McKinley v. Butler, 809 F.3d 908, 909 (7th Cir. 2016) (revoca la sentencia del joven de dieciséis años que fue condenado a 100 años de prisión; ordena resentenciar); Moore v. Biter, 725 F.3d 1184, 1194 (9th Cir. 2013) (revoca la sentencia del joven de dieciséis años que fue condenado a 254 años de prisión; por tanto tendría posibilidad de libertad bajo palabra después de 127 años y dos meses).

[17]Johnson v. State, 215 So.3d 1237 (Fla. 2017) (revoca la sentencia del joven de diecisiete años que fue condenado a 100 años de prisión); Atwell v. State, 197 So.3d 1040 (Fla. 2016) (revoca la sentencia del joven de dieciséis años que fue sentenciado a una condena de por vida con posibilidad de libertad bajo palabra después de 140 años de ocurrido los hechos); Gridine v. State, 175 So.3d 672 (Fla. 2015) (revoca la sentencia del joven de catorce años que fue condenado a 70 años de prisión); Henry v. State, 175 So.3d 675 (Fla. 2015) (revocada la sentencia del joven de diecisiete años que fue condenado a un total de 90 años).

[18]State v. Ramos, 387 P.3d 650, 659-661 (Wash. 2017).

[19]People v. Reyes, 63 N.E.3d 884 (Ill. 2016) (revoca la sentencia del joven de dieciséis años que fue condenado a 97 años de prisión; por tanto tendría posibilidad de libertad bajo palabra después de 89 años; ordena resentenciar).

Indiana,[20]   Ohio,[21]   Iowa,[22]   Connecticut,[23]   Wyoming,[24]

Massachusetts,[25]  Missouri,[26]  New Jersey,[27]  y California[28]

---

[20]Fuller v. State, 9 N.E.3d 653 (Ind. 2014) (reduce la sentencia del joven de quince años que fue condenado a 150 años de prisión); Brown v. State, 10 N.E.3d 1 (Ind. 2014) (reduce la sentencia del joven de dieciséis años que fue condenado a 150 años de prisión).

[21]State v. Moore, 76 N.E.3d 1127 (Ohio 2016) (revoca la sentencia del joven de quince años que fue condenado a 112 años de prisión; ordena resentenciar).

[22]State v. Ragland, 836 N.W.2d 107 (Iowa 2013) (confirmada la resentencia del joven de diecisiete años que fue condenado originalmente a encarcelamiento de por vida; la resentencia le permitió obtener la libertad a prueba de forma inmediata); State v. Null, 836 N.W.2d 41 (Iowa 2013) (revoca la sentencia del joven de dieciséis años que fue condenado a 75 años de prisión; por tanto tendría posibilidad de libertad bajo palabra después de 52.5 años; ordena resentenciar).

[23]Casiano v. Commissioner of Correction, 115 A.3d 1031 (Conn. 2015) (revoca la sentencia del joven de dieciséis años que fue condenado a 50 años de prisión sin posibilidad de libertad bajo palabra); State v. Riley, 110 A.3d. 1205 (Conn. 2015) (revoca la sentencia del joven de diecisiete años que fue condenado a 100 años de prisión sin posibilidad real de libertad bajo palabra de forma discrecional; ordena resentenciar).

[24]State v. Mares, 335 P.3d 487 (Wyo. 2014) (tribunal confirma que está acorde con la jurisprudencia federal cuando un joven de dieciséis años que fue condenado a encarcelamiento de por vida, el Estado enmienda la ley para permitirle la posibilidad de libertad bajo palabra después de 25 años en la cárcel); Bear Cloud v. State, 334 P.3d 132 (Wyo. 2014) (revoca la sentencia del joven de dieciséis años que fue condenado a encarcelamiento de por vida con posibilidad de libertad bajo palabra después de 45 años; ordena resentenciar).

[25]Diatchenko v. Dist. Attorney for Suffolk Dist., 1 N.E.3d 270, 281 (Mass. 2013) (revoca la sentencia del joven de diecisiete años que fue condenado a encarcelamiento de por vida sin posibilidad de libertad bajo palabra; además establece que no es válido el encarcelamiento de por vida a pesar de poder ser discrecional).

[26]State ex rel. Carr v. Wallace, 527 S.W. 3d 55 (Mo. 2017) (revoca la sentencia del joven de dieciséis años que fue condenado a encarcelamiento de por vida con

han resuelto que la norma pautada en Miller v. Alabama, supra, y ampliada en Montgomery v. Louisiana, supra, **aplican indistintamente a sentencias agregadas que imponen un término específico de tiempo, entiéndase, que no sea encarcelamiento de por vida, o sentencias dictadas bajo un régimen discrecional, si estas colocan al convicto en la situación en que primero morirán en prisión antes de advenir elegible para el beneficio de libertad bajo palabra.** Es decir, que para esos estados una sentencia de un término fijo extenso --incluso menor que la pena 372 años impuesta en el caso ante nos-- constituye una condena de por vida *de facto.*

Lo anterior, a mi juicio, es lo correcto para aquellos casos en que un menor juzgado como adulto invoque la normativa constitucional en materia de justicia juvenil a la luz de la jurisprudencia del Tribunal Supremo federal aquí discutida. Tanto, Graham v. Florida, supra, como Miller v. Alabama, supra, atienden, en mi opinión, el concepto vida mucho más general que la supervivencia biológica. En esas

posibilidad de libertad bajo palabra después de 50 años; ordena resentenciar).

[27]State v. Zuber, 152 A.3d 197 (N.J. 2017) (revoca la sentencia del joven de diecisiete años que fue condenado a 110 años de prisión con posibilidad de libertad bajo palabra después de 55 años, ordena resentenciar; a su vez, confirma la decisión de resentenciar a otro joven de diecisiete años de edad que fue condenado originalmente a 75 años de prisión con posibilidad de libertad bajo palabra después de 68 años y tres meses de prisión).

[28]People v. Caballero, 282 P.3d 291 (Cal. 2012)(revoca la sentencia del joven de dieciséis años de edad que fue condenado a 110 años de prisión).

opiniones, el Tribunal entrelazó sus decisiones al hecho

de que la persona no tiene la oportunidad real de volver

a entrar a la sociedad o tener una vida significativa

fuera de la cárcel.[29] Lo dictaminado por el máximo foro

federal, de que los menores de edad son diferentes a los

adultos, no puede limitarse sólo a los casos de

encarcelamiento de por vida. Tal diferencia, de tomar la

edad y las características de los jóvenes al momento de

sentenciar, debe ser aplicada siempre y cuando se vaya a

sentenciar a un menor de edad; incluso, cuando no exista

---

[29]El Tribunal Supremo federal en Graham v. Florida, supra, dispuso lo siguiente: "What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation". Íd., pág. 75. Además, enfatizó lo siguiente:

> The juvenile should not be deprived of the opportunity to achieve maturity of judgment and self-recognition of human worth and potential. In *Roper,* that deprivation resulted from an execution that brought life to its end. Here, though by a different dynamic, the same concerns apply. Life in prison without the possibility of parole gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope. Maturity can lead to that considered reflection which is the foundation for remorse, renewal, and rehabilitation. A young person who knows that he or she has no chance to leave prison before life's end has little incentive to become a responsible individual. In some prisons, moreover, the system itself becomes complicit in the lack of development. As noted above, it is the policy in some prisons to withhold counseling, education, and rehabilitation programs for those who are ineligible for parole consideration. A categorical rule against life without parole for juvenile nonhomicide offenders avoids the perverse consequence in which the lack of maturity that led to an offender's crime is reinforced by the prison term. Íd., pág. 79 (cita omitida).

un esquema que obligue cierto tipo de sentencia por el crimen cometido. En consecuencia, opino que no existe distinción entre una condena de encarcelamiento de por vida y una sentencia de un término de varias décadas o de cientos de años. Ambas deniegan la oportunidad a la persona de regresar a la sociedad y ambas tienen el efecto de que el joven morirá en prisión.[30]

Por todo lo anterior, considero que este Tribunal no debió permitir que aquellos a quienes el ordenamiento les atribuye una culpabilidad atenuada continúen cumpliendo el castigo más severo que nuestro ordenamiento permite. En ese sentido, precisa recordar que este Tribunal viene obligado a interpretar las disposiciones de nuestra Constitución de manera tal que provean --**como mínimo**-- el mismo ámbito protector que sus homólogas en la Constitución federal. Véase, Rodríguez v. ELA, 130 DPR 562, 575 (1992). A tales fines, las características concomitantes a la minoridad deben ser tomadas en cuenta por el juzgador para tomar

---

[30]Estas consideraciones fueron las que tomó en consideración el Tribunal Supremo de los Estados Unidos en Graham v. Florida, supra:

> Terrance Graham's sentence guarantees he will die in prison without any meaningful opportunity to obtain release, no matter what he might do to demonstrate that the bad acts he committed as a teenager are not representative of his true character, even if he spends the next half century attempting to atone for his crimes and learn from his mistakes. The State has denied him any chance to later demonstrate that he is fit to rejoin society based solely on a nonhomicide crime that he committed while he was a child in the eyes of the law. This the Eighth Amendment does not permit. Íd., pág. 79.

una decisión razonada al momento de emitir su sentencia. Es decir, debe tomarse en consideración las características reseñadas que atenúan la culpabilidad atribuible a los menores de edad, y cómo estas favorecen la imposición de una pena que le permita al convicto una oportunidad real y eficaz para demostrar que, en efecto, maduró y se rehabilitó.

Es por ello, que considero que condenar a un menor de edad procesado como adulto a 372 años de presidio **sin antes** ponderar las características inherentes a esa etapa de vida que afectan su toma de decisiones y disminuyen su culpabilidad, es, precisamente, el presupuesto que activa la aplicación retroactiva de la norma pautada en <u>Miller v. Alabama</u>, supra. En situaciones en que el menor de edad es sentenciado a encarcelamiento perpetuo los tribunales venimos obligados a garantizar que este tenga la oportunidad para "demostrar que el fundamento de *Miller* es correcto, es decir, **que todo adolescente, incluso los que resultan convictos de los delitos más estremecedores, son capaces de rehabilitarse**". <u>Montgomery v. Louisiana</u>, supra, pág. 736 (traducción y énfasis suplidos).[31] En <u>Montgomery v. Lousiana</u>, supra, el Tribunal Supremo fue puntual al señalar que:

---

[31]Textualmente, el Tribunal expresó lo siguiente: "Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change". <u>Montgomery v. Louisiana</u>, supra, pág. 736.

Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that Sentence still violates the Eight Amendment for a child whose crime reflects 'unfortunate yet transient immaturity. Because *Miller* determined that sentencing a child to life without parole is excessive for all but the 'rare juvenile ofender whose crime reflects irreparable corruption [. . .], it rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status' –that is, juvenile offenders whose crimes reflect the transient immaturity of youth. Íd. págs. 734-735.

Sin embargo, ante estas expresiones este Tribunal erradamente opta por no expedir el recurso ante nos. Ello, sin dudas, equivale a desacatar el claro mandato del Tribunal Supremo federal y en ese sentido no podemos permanecer silentes.

**V**

En consecuencia, revocaría el dictamen emitido por el Tribunal de Apelaciones y ordenaría la celebración de una vista donde se evalúen los criterios enunciados y, ante las particularidades del remedio retroactivo, determine si Álvarez Chevalier tiene derecho a ser resentenciado o presentar una petición para disfrutar del beneficio de libertad bajo palabra ante la Junta de Libertad Bajo Palabra.

Luis F. Estrella Martínez
Juez Asociado