Tony MANN, Appellant,

v.

Ellis MCSWAIN, Respondent.

WD 80006

Missouri Court of Appeals, Western District.

Filed: June 13, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied August 1, 2017

Kent E. Gipson, Kansas City, for appellant.

Michael J. Spillane, Jefferson City, for respondent.

Before Division Three: Alok Ahuja, P.J., and Victor C. Howard and James E. Welsh, JJ.

Alok Ahuja, Judge

In 2002, appellant Tony Mann was convicted of assault of a law enforcement officer in the first degree and an associated count of armed criminal action. Mann is currently serving his sentences. The Board of Probation and Parole issued an order granting Mann parole and ordering that he be released from confinement on October 5, 2016. The Board later rescinded that order, however, because it determined that assault of a law enforcement officer is a "dangerous felony" for which Mann is required to serve eighty-five percent of his sentence before becoming parole-eligible. Mann filed a petition for a writ of mandamus in the Circuit Court of Cole County to compel the Board to reinstate his parole release date. The circuit court denied relief, and Mann appeals. We affirm.

**Factual Background**

Following a bench trial, Mann was convicted in 2002 in the Circuit Court of Greene County of first-degree assault of a law enforcement officer, and an associated count of armed criminal action. The convictions arose from an incident on October 4, 2001, in which Mann fired a handgun at a Springfield police officer who was attempting to detain him. The circuit court sentenced Mann to life imprisonment on the assault charge, and to ten years' imprisonment for armed criminal action, with the sentences ordered to run concurrently. A detailed description of the underlying offense, and of Mann's prosecution, is contained in the opinions of the Southern District affirming Mann's convictions on direct appeal, and affirming the denial of his motion for post-conviction relief. *See State v. Mann*, 129 S.W.3d 462 (Mo. App. S.D. 2004); *Mann v. State*, 245 S.W.3d 897 (Mo. App. S.D. 2008).

Mann is currently incarcerated at the South Central Correctional Center in Licking. In October 2014, Mann received his first parole hearing. Following that hearing, the Board issued an order on November 17, 2014, granting Mann parole and ordering that he be released from confinement on October 5, 2016.

On March 7, 2016, the Board cancelled Mann's parole release date. The Board rescinded its earlier order based on its determination that first-degree assault of a law enforcement officer is a "dangerous felony" within the meaning of § 556.061(8),[1] and that Mann is therefore required to serve eighty-five percent of his sentence before becoming eligible for parole pursuant to § 558.019.3. The Board set a new parole hearing in 2025.

On April 22, 2016, Mann filed a petition for a writ of mandamus challenging the Board's action in the Circuit Court of Cole County. The circuit court issued a preliminary writ of mandamus on April 25, 2016. After briefing and argument, however, the court quashed its preliminary writ and denied Mann's petition.

Mann appeals.[2]

1. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri.

2. Following the circuit court's denial of his mandamus petition, Mann initially filed an original petition for writ of mandamus in this Court. *State ex rel. Mann v. McSwain*, No. WD79922. We denied the petition because Mann had an adequate remedy by appeal. Mann then filed a mandamus petition in the

## Standard of Review

An appeal will lie from the denial of a writ petition when a lower court issued a preliminary order in mandamus but then denied a permanent writ. ... An appellate court reviews the denial of a petition for a writ of mandamus for an abuse of discretion. An abuse of discretion in denying a writ occurs when the circuit court misapplies the applicable statutes.

*U.S. Dep't of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 358-59 (Mo. banc 2013)(citations omitted). "Where ... issuance of the writ depends on the interpretation of a statute, this Court reviews the statute's meaning *de novo*." *State ex rel. White Family P'ship v. Roldan*, 271 S.W.3d 569, 572 (Mo. banc 2008) (citation omitted).

## Analysis

Mann argues that the circuit court should have granted him mandamus relief, because the Board erroneously concluded that his offense constituted a "dangerous felony." We disagree.[3]

We begin with the text of the relevant statutes. Mann was convicted of first-degree assault of a law enforcement officer under § 565.081. At the time of his offense in 2001, § 565.081 provided:

1. A person commits the crime of assault of a law enforcement officer in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer.

2. Assault of a law enforcement officer in the first degree is a class A felony.

The parole-eligibility statute at issue here provided:

Other provisions of the law to the contrary notwithstanding, any defendant who has pleaded guilty to or has been found guilty of a dangerous felony as defined in section 556.061, RSMo, and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court or until the defendant attains seventy years of age, and has served at least forty percent of the sentence imposed, whichever occurs first.

§ 558.019.3. Finally, "dangerous felony" was defined as follows in § 556.061(8):

"Dangerous felony" means the felonies of arson in the first degree, assault in the first degree, forcible rape, forcible sodomy, kidnapping, murder in the second degree and robbery in the first degree.

Our interpretation of these statutes is subject to well-established canons of construction.

[T]he primary rule of statutory interpretation ... is to give effect to the plain and ordinary meaning of the statutory language. If the words are clear, the Court must apply the plain meaning of the law. When the meaning of a statute is clear, the Court should not employ canons of construction to achieve a desired result.

*State v. Bazell*, 497 S.W.3d 263, 266 (Mo. banc 2016) (citations omitted). Although the statutes at issue are criminal statutes

Missouri Supreme Court. *State ex rel. Mann v. McSwain*, No. SC95873. The Supreme Court denied Mann's petition without comment.

**3.** As a threshold matter, the Board contends that Mann should have sought declaratory relief, rather than a writ of mandamus, because he raises a statutory interpretation issue of first impression. Given our conclusion that Mann's statutory arguments lack merit, we need not decide whether he pursued his claims using the correct procedural vehicle.

which "we generally construe ... in the manner most favorable to the defendant," "that rule of construction does not require us to ignore common sense or the statute's evident purpose." *Irvin v. Kempker*, 152 S.W.3d 358, 360 (Mo. App. W.D. 2004) (citing *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992)); *see also Bantle v. Dwyer*, 195 S.W.3d 428, 431 (Mo. App. S.D. 2006).

Mann contends that his offense did not constitute "assault in the first degree" as that term is used in § 556.061(8), and was accordingly not a "dangerous felony" subject to the "85% rule" established by § 558.019.3. We conclude, to the contrary, that assault of a law enforcement officer in the first degree constitutes a type of "assault in the first degree," and therefore falls within the statutory definition of a "dangerous felony." We reach this conclusion for multiple reasons.

### A.

First, by naming Mann's offense "assault of a law enforcement officer in the first degree," the legislature expressly designated the offense as a form of "assault in the first degree." In addition, the offense of assault of a law enforcement officer in the first degree includes all of the elements of simple first-degree assault. Section 565.050 defined first-degree assault as follows:

1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

The offense of which Mann was convicted merely added an additional element to the definition of simple first-degree assault: that the offender knows that the assault victim is a law enforcement officer. In addition, § 565.081.2 subjected offenders who assault law enforcement officers to more severe punishment than for simple first-degree assault: the offense was in all cases categorized as a class A felony, unlike simple first-degree assault, which only constituted a class A felony if serious physical injury actually resulted.

Because proof of assault of a law enforcement officer in the first degree required proof of all of the elements of simple first-degree assault, with the addition of a further element, Mann concedes that first-degree assault was a lesser-included offense of the crime of which he was convicted. *See* § 556.046.1(1) (specifying that a defendant may be convicted of an included offense if "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged"); *State v. Johnson*, 220 S.W.3d 377, 385 (Mo. App. E.D. 2007). Therefore, Mann was "found guilty of a dangerous felony" within the meaning of § 558.019.3, both because his offense is denominated by statute as a type of first-degree assault, but also because the court necessarily found that he had committed all of the essential elements of simple first-degree assault.[4]

---

4. The statutory interpretation issue in this case is importantly different from the issues we faced in *Robertson v. State*, 392 S.W.3d 1 (Mo. App. W.D. 2012), and *State ex rel. Whitaker v. Satterfield*, 386 S.W.3d 893 (Mo. App. S.D. 2012) (both abrogated by 2013 amendments to § 632.480(4), RSMo 2016). In those cases, the crimes of which the offenders had been convicted no longer existed at the time that the legislature enacted its definition of "sexually violent offenses" which could subject an offender to civil commitment as a sexually violent predator. Moreover, the crimes of which the offenders had been con-

## B.

The history of the relevant statutes supports the conclusion that the reference to "assault in the first degree" in § 556.061(8) includes assault of a law enforcement officer in the first degree.

The General Assembly originally enacted a definition of "dangerous felony" in 1977, as part of the Criminal Code which became effective on January 1, 1979. The original definition provided:

"Dangerous felony" means the felonies of murder, forcible rape, *assault*, burglary, robbery, kidnapping or the attempt to commit any of these felonies.

§ 556.061(8), RSMo 1978 (emphasis added). At the time, Missouri statutes contained no generic crime of "assault"; instead, Missouri criminalized the offenses of assault in the first, second, and third degrees. *See* §§ 565.050, .060 and .070, RSMo 1978. Thus, when the "dangerous felony" definition was originally enacted, the term "assault" necessarily referred to a category of offenses, rather than to a specific crime. This reading of the original "dangerous felony" definition is supported by the Comment to the 1973 proposed Criminal Code, which explains that "dangerous felony" was "defined in terms that encompass crimes as defined in the Code and crimes as defined in the statutes presently in force and similar crimes in other states."

The legislature created the separate offenses of assault of a law enforcement officer in the first, second, and third degrees in 1989. *See* S.B. 215, 1989 Mo. Laws 597, 635-36 (enacting new §§ 565.081, .082, and .083). As explained above, these new offenses provided a heightened range of punishment for assaults committed against a particular category of victims: law enforcement officers. At the time the legislature created these new offenses, the generic category of "assault" remained part of the definition of a "dangerous felony." *See* § 556.061(8), RSMo Supp. 1988. Therefore, when the offense of assault of a law enforcement officer in the first degree was created, the new offense plainly fell within the definition of a "dangerous felony," because it was a type of "assault" offense.

The legislature narrowed the definition of a "dangerous felony" in 1994. *See* S.B. 763, 1994 Mo. Laws 720, 739 (amending § 556.061(8)). Unlike the earlier definition, which categorized *all* "assault" offenses as "dangerous felonies," the new statute provided that only "assault *in the first degree*" constituted a "dangerous felony." (The 1994 bill placed similar limitations on the other categories of offenses included in the definition of a "dangerous felony.") Notably, the same bill which modified—and significantly narrowed—the definition of "dangerous felony" in 1994 also enacted the "85% rule," which requires that offenders convicted of "dangerous felonies" serve eight-five percent of their sentences before becoming eligible for parole. *Id.* at 742 (enacting new § 558.019.3).

Mann argues that, when it amended the definition of a "dangerous felony" in 1994, the General Assembly intended to exclude assault of a law enforcement officer in the first degree from the definition. We disagree. Instead, the obvious reason for inserting the qualifier "in the first degree" was to exclude assault in the second or third degrees, to exempt those less serious offenses from the operation of the newly-enacted "85% rule." We cannot conclude that the 1994 statutory amendment was

victed in *Robertson* and *Whitaker* had materially different elements than the crimes listed in the statutory definition of a "sexually vio-

lent offense." Neither of those circumstances exists here.

*also* intended to exclude from the "dangerous felony" definition an offense which was *more* serious than simple first-degree assault. The 1994 legislation excluded only those "assault" offenses not classified as "first degree" crimes.

We acknowledge that, in 2003, the legislature further amended the definition of a "dangerous felony" to explicitly add "assault of a law enforcement officer in the first degree" to the definition. *See* S.B. 5, 2003 Mo. Laws 756, 762.[5] Mann argues that the 2003 amendment—which explicitly added his offense to the definition of a "dangerous felony"—demonstrates that his offense was not *previously* included in the definition, because "[a]n amended statute ... should be construed on the theory that the legislature intended to accomplish a substantive change in the law." *Sermchief v. Gonzales*, 660 S.W.2d 683, 689 (Mo. banc 1983) (citations omitted). While we must presume that the legislature intended to accomplish a purpose by inserting "assault of a law enforcement in the first degree" into § 556.061(8), the legislature's purpose "may be to clarify and detail an existing law." *State v. Starkey*, 380 S.W.3d 636, 644 (Mo. App. E.D. 2012) (citation omitted); *see also, e.g., Webster Cnty. Abstract Co. v. Atkison*, 328 S.W.3d 434, 443 (Mo. App. S.D. 2010) ("a statutory amendment, especially one that simply involves adding a definition to a statute, can be used to clarify and not to change"); *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 109 (Mo. App. W.D. 2008) (en banc).

In this case, the 2003 amendment to the "dangerous felony" definition added numerous specific offenses to the definition of "dangerous felony," including elder abuse

in the first degree, statutory rape and statutory sodomy in the first degree when the victim is less than twelve years old, and abuse of a child. In light of the addition of these specific offenses to the statute, the legislature could rightfully conclude that it was advisable to specifically list assault of a law enforcement officer in the first degree in the definition, because of the implication that, post-2003, all offenses constituting "dangerous felonies" were particularly described. The 2003 addition of assault of a law enforcement officer in the first degree to the "dangerous felony" definition clarified the existing statute—it did not substantively amend it.

## C.

Finally, interpreting the dangerous felony statute to include first-degree assault of a law enforcement officer avoids an unreasonable result. The obvious purpose for the legislature's creation of separate offenses involving assaults against law enforcement officers was to impose *harsher* punishments on offenders who knowingly attack peace officers. To interpret the definition of a "dangerous felony" in the manner Mann advocates would mean that those who have assaulted law enforcement officers would be eligible for parole after serving *less* of their sentences than offenders convicted of the lesser-included offense of first-degree assault on other persons. Such a result would be inconsistent with the legislature's evident intent to treat assault of law enforcement officers more severely than simple assault.

We also note that the defined term "dangerous felony" appears in numerous other statutes beyond § 558.019.3 (which imposes the "85% rule").[6] These statutes

**5.** The Board has not argued on appeal that the 2003 amendment to § 556.061(8) applies to Mann, and we therefore need not address the issue.

**6.** *See, e.g.,* § 70.820.6 (providing extra-jurisdictional arrest authority where law enforcement officer observes any person committing a dangerous felony); § 221.503.1, RSMo 2016

demonstrate the legislature's recognition, in a variety of contexts, that persons accused or convicted of dangerous felonies present particular dangers to the public, and that such offenders or defendants require different, and more restrictive, treatment than persons accused or convicted of less serious offenses. Once again, it would be unreasonable to presume that the legislature intended to exempt persons accused or convicted of first-degree assault of a law enforcement officer from such statutes, while those accused or convicted of the lesser offense of simple first-degree assault remain subject to them.

Mann argues that it would be unreasonable to subject him to the 85% rule based on an interpretation of the relevant statutes adopted by the Board in 2016, because the court which sentenced him to life imprisonment for his assault conviction in 2002 presumably acted on the basis that his offense was *not* a "dangerous felony." The record of Mann's trial belies this claim. At the sentencing hearing, the prosecution specifically argued that Mann's sentence for his assault conviction would be subject to the 85% rule, and neither defense counsel nor the court expressed any disagreement. Thus, from all that appears from the record, the circuit court sentenced Mann to life imprisonment with a full appreciation that he would be required to serve 85% of that sentence before becoming eligible for parole.

### Conclusion

For the foregoing reasons, the Board of Probation and Parole correctly concluded

that the offense of which Mann was convicted was a "dangerous felony" subject to the 85% rule contained in § 558.019.3. We affirm the circuit court's denial of Mann's petition for writ of mandamus.

All concur.

(imposing requirement on jailers to promptly report escape from detention of individuals accused or convicted of a dangerous felony); § 217.362.1 (excluding those convicted of dangerous felonies from Department of Corrections' intensive long-term substance-abuse treatment program); § 571.072, RSMo 2016 (criminalizing possession of an explosive weapon by persons convicted of dangerous felonies); § 595.209.1, RSMo 2016 (specifying that enumerated rights "shall automatically be afforded to victims of dangerous felonies," although only afforded to victims of other crimes on written request); §§ 630.615(5), 630.620 (restricting Department of Mental Health's placement of individuals found not guilty of a dangerous felony by reason of a mental disease or defect).