

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

In Re: LEONTAE C. HILL,  )
                    Petitioner,  )
                                   )

v.  )  WD81483
                                   )

JAY CASSADY, in his capacity as  )  FILED: January 22, 2019
Superintendent, JEFFERSON  )
CITY CORR. CENTER,  )
                    Respondent.  )

### Original Proceeding on Petition for Writ of Habeas Corpus

### Before Writ Division: Alok Ahuja, P.J., and
### Lisa White Hardwick, J. and Karen King Mitchell, C.J.

Leontae Hill filed a petition for an original writ of habeas corpus, asking this Court to vacate his 2002 convictions and/or sentences for four counts of first-degree assault of a law enforcement officer, and one count of armed criminal action. In his habeas petition, Hill contended that his trial counsel was ineffective for misinforming him that the charges of first-degree assault of a law enforcement officer did not carry a mandatory minimum prison term prior to parole eligibility, when the law requires that an offender serve 85% of his or her sentence prior to becoming parole-eligible. Hill's petition alleged that, if his counsel had correctly advised him concerning the 85% minimum term, he would have accepted a plea offer rather than taking his case to trial, and would have received a lesser sentence. Hill's habeas petition also contended that the circuit court sentenced him based on the false understanding that first-degree assault of a law-enforcement officer was

not subject to an 85% minimum term, and that he is accordingly entitled to be resentenced.

After the filing of Hill's petition and a response from the State, we appointed a special master to conduct an evidentiary hearing on the claims in Hill's petition. Following an evidentiary hearing, the master issued a report recommending that Hill's petition be denied. After consideration of supplemental briefing and argument of the parties, we adopt the special master's recommendation and deny Hill's habeas petition.

**Factual Background**

In the early morning of January 1, 2000, four Kansas City Police Department officers drove to 29th Street and Prospect Avenue in Kansas City after hearing gunshots in the area. When the officers arrived, they saw Leontae Hill and two other men on the steps of an apartment building, where they had apparently been attempting to shoot out streetlights. When the officers drove back through the area, Hill fired an automatic weapon approximately thirty times at the patrol vehicle, hitting and wounding two of the officers.

Hill was charged with four counts of assault of a law enforcement officer in the first degree and four counts of armed criminal action. A jury found him guilty on all counts. The jury recommended that Hill be sentenced to life imprisonment on each of the four counts of assault of a law enforcement officer, and to fifteen years' imprisonment on each of the four counts of armed criminal action.

The circuit court held a sentencing hearing on February 11, 2002. Prior to the hearing, a sentencing assessment report was prepared. The report did not discuss the fact that Hill would be required to serve 85% of any sentence for first-degree assault of a law enforcement officer.

The State called three of the four officers who were victims of Hill's crimes to testify at the sentencing hearing. Each of the officers asked that Hill be given

2

consecutive life sentences on the four assault counts. One of the officers testified that, "I don't believe that [Hill] has any place in our society. . . . I think he needs to spend the rest of his life in jail."

During the sentencing hearing, Hill's counsel argued that "[w]hat [the State is] actually asking for is life without parole. Several life sentences run consecutively is the same thing."

In addition to calling three of his own witnesses, Hill made a statement to the court at the sentencing hearing. Hill stated that "[e]ach day I'm in that cell, looking out the window, and every time that door shuts I know I'm convicted for a crime I didn't commit." Hill told the court that "[i]t never leaves my mind about how I'm convicted of a crime that I know, deep down in my heart, that I didn't commit." Hill asked the court to take into account the fact that he was seventeen years old at the time of the offenses, and twenty at the time of sentencing, and show mercy in its sentencing decision.

Prior to announcing Hill's sentences, the court stated, that "[t]his is probably one of the most senseless vicious crimes that I have seen in the 25 years that I have been on the bench." The court emphasized that "[p]olice are here to protect us and to keep order and to make society safe," and that they "lay[ ] their life on the line every time they go out in their car." The court stated that "it's almost impossible for me to realize why anybody would take a weapon and put 30 shells into a police car or any car." The court noted that one of the officer-victims "would have died if the bullet would have been probably one-fourth of an inch either way," but that instead he had suffered virtually complete loss of hearing and other serious injuries. The court said, "Mr. Hill, it's hard to feel sympathy or find mercy for somebody that takes the law into their own hands and just shoots at people. You're fortunate you weren't here for capital murder on four people."

3

Consistent with the jury's recommendations, the court sentenced Hill to life imprisonment for each count of first-degree assault of a law enforcement officer, and to 15 years on each count of armed criminal action. The court said, "Mr. Hill, over the years that I have been on the bench I haven't made a lot of sentences consecutive to each other. Counsel, in this case, the sentences will be consecutive to each other."

There was no mention of parole eligibility at any point during Hill's sentencing hearing.

We affirmed Hill's convictions and sentences on direct appeal. *State v. Hill*, No. WD61085, 114 S.W.3d 310 (Mo. App. W.D. 2003) (*mem.*). Hill then filed a motion for post-conviction relief, which the circuit court denied. On appeal, we affirmed the circuit court's rejection of Hill's claims that he received ineffective assistance of counsel at trial. *Hill v. State*, 181 S.W.3d 611, 618–21 (Mo. App. W.D. 2006). We vacated Hill's convictions and sentences for three of the four counts of armed criminal action, however, on double jeopardy grounds. *Id.* at 615–17. Hill raised no claim in his direct appeal or post-conviction relief proceeding that his counsel had misinformed him concerning his eligibility for parole, or that the circuit court had sentenced him based on a misunderstanding concerning his parole-eligibility.

When Hill was first received by the Department of Corrections in 2002, the Department did not apply any minimum prison term to Hill's sentences for first-degree assault of a law enforcement officer. At the evidentiary hearing in this habeas proceeding, Hill introduced into evidence a Department Face Sheet prepared in July 2015, which indicated "Percent Required: 0%" on his sentences for each convictions for first-degree assault of a law enforcement officer. Hill testified at the evidentiary hearing that he was given a parole hearing in January 2014, and was scheduled for a further hearing five years later, in 2019.

4

The Department changed its position concerning Hill's parole eligibility in February 2016. At that time, the Department provided Hill a revised Face Sheet, which indicated that he was required to serve a minimum prison term of 85% of his sentence for each count of assault of a law enforcement officer in the first degree. The Department issued the revised Face Sheet based on its determination that first-degree assault of a law enforcement officer constituted a "dangerous felony" within the meaning of § 556.061(8), RSMo Cum. Supp. 1999, and that Hill was therefore required to serve 85% of his sentences on each count of first-degree assault of a law enforcement officer by operation of § 558.019.3, RSMo Cum. Supp. 1999. The Department informed Hill that his 2019 parole review hearing had been cancelled, and that he had instead been scheduled for a parole hearing in January 2065.

On July 25, 2016, Hill filed a petition seeking declaratory relief in the Circuit Court of Cole County, arguing that the Department of Corrections had erroneously determined that his assault convictions constituted "dangerous felonies," and was therefore erroneously requiring him to serve 85% of his sentences before being considered for parole. While Hill's petition was pending, this Court held in *Mann v. McSwain*, 526 S.W.3d 287, 290 (Mo. App. W.D. 2017), that first-degree assault of a law enforcement officer was a "dangerous felony" subject to an 85% minimum term between 1994 and 2003 (when Hill committed his offenses). Following the decision in *Mann*, Hill was granted leave to file an amended petition, in which he reasserted his claim for declaratory relief, but argued in the alternative that he should be entitled to habeas corpus relief because both his trial counsel, and the circuit court, incorrectly understood his parole eligibility at the time of his trial and sentencing. After briefing, the Circuit Court of Cole County granted the Department of Corrections' motion for judgment on the pleadings on the declaratory relief count, and denied Hill's alternative petition for habeas corpus relief.

5

Hill appealed the circuit court's grant of judgment on the pleadings on his claim for declaratory relief. In an opinion issued on December 18, 2018, we affirmed the circuit court's judgment denying declaratory relief. *Hill v. Mo. Dep't of Corr.*, No. WD81448, 2018 WL 6611875 (Mo. App. W.D. 2018). We held that, under the *Mann* decision, Hill's offenses constituted "dangerous felonies" at the time of his offenses and convictions. We also rejected Hill's claim that it was fundamentally unfair to apply *Mann*'s holding to his case.

While he was prosecuting his appeal on the declaratory relief claim, Hill also filed an original Petition for a Writ of Habeas Corpus in this Court.[1] Hill's habeas petition alleged that his trial counsel was ineffective for misadvising him concerning his eligibility for parole on the assault charges, which led Hill to forego a plea offer made by the State. Hill also alleged that the circuit court misunderstood his parole eligibility at the time of his sentencing. Hill's petition alleged that he was entitled to the vacation of his convictions and the opportunity to accept the State's pre-trial plea offer, or instead to the vacation of his sentences and an opportunity for resentencing.

After receiving a response from the State, we appointed Janette K. Rodecap, an Associate Circuit Judge in the Circuit Court of Jackson County, to serve as special master "to conduct an evidentiary hearing to determine if [Hill] has established grounds to excuse any procedural default, and has established grounds to vacate his convictions and/or sentences."[2]

---

[1] Hill pursued this bifurcated procedure because "[t]here is no appeal from the denial of a petition for a writ of habeas corpus." *Blackmon v. Mo. Bd. of Prob. & Parole*, 97 S.W.3d 458, 458 (Mo. banc 2003). Instead, "[t]he dismissal of a petition for a writ of habeas corpus can only be pursued by petitioning a superior court for such a writ, not by appeal." *Bromwell v. Nixon*, 361 S.W.3d 393, 396 (Mo. banc 2012). *See also, e.g.*, *Ferguson v. Dormire*, 413 S.W.3d 40, 50–51 (Mo. App. W.D. 2013).

[2] We express our appreciation to Judge Rodecap for her exemplary service as special master in this case.

At the evidentiary hearing on Hill's petition, his trial counsel Tim Burdick testified that, at the time of Hill's trial, Burdick did not believe that first-degree assault of a law enforcement officer was a "dangerous felony" subject to an 85% minimum term. Burdick testified that he never told Hill that he was charged with an 85% crime, or that he would have to serve a specific percentage of his sentence before he would be parole eligible. Burdick was unsure, however, whether he ever told Hill that he was _not_ charged with an 85% crime, or whether he specifically told him there was _no_ mandatory minimum sentence. Burdick also testified that it was his practice to inform the court at sentencing if the defendant would be required to serve an 85% mandatory minimum. The record from the trial and sentencing hearing indicates that no one advised the court that the assault charges were subject to the 85% rule.

Burdick also testified that the State had extended a plea offer to dismiss two counts of assault of a law enforcement officer in the first degree and two counts of armed criminal action if Hill agreed to plead guilty to the other two counts of assault of a law enforcement officer in the first degree, and the associated counts of armed criminal action. Burdick testified that this plea offer did not include any agreement as to sentencing, and that under the offer the parties would be free to ask for any authorized sentence.

Burdick testified that he remembered discussing with Hill the risks and benefits of pleading guilty *versus* going to trial. Burdick testified that his advice whether to plead guilty or not would depend on the strength of the evidence. Burdick testified that he believed at the time that Hill had a good chance of being acquitted, because the evidence identifying Hill as the individual who shot into the police car came from witnesses who had motives to lie.

The assistant prosecutor who handled Hill's trial and sentencing, Michael Hunt, testified at the evidentiary hearing that he was unsure whether he believed

7

that first-degree assault of a law enforcement officer was an 85% crime at the time of Hill's prosecution. Hunt testified that he had reviewed his trial file, and that it did not contain any notes as to any plea offer. He had no memory of making any plea offer. Hunt testified that this was a very serious case in which Hill had shot at four police officers, and that it would be very unusual for him to make a plea offer in a case like this. Hunt testified that he would have spoken to the police officer-victims before making any plea offer, and that he did not recall having such a conversation in this case.

Hill also testified at the evidentiary hearing. He testified that none of his attorneys ever told him that assault of a law enforcement officer was a dangerous felony requiring him to serve 85% of any sentence imposed for that offense. Instead, Hill testified that counsel informed him that he could be considered for parole after serving approximately one-third of his sentence. Hill recalled discussing a plea offer with counsel Burdick under which he would plead guilty to two of the counts of assault of a law enforcement officer and the two associated armed criminal action charges, in exchange for the State dismissing the remaining four counts. Hill testified that Burdick never told him that, if he rejected the plea offer and went to trial, he could effectively be sentenced to life without parole. Hill testified that, if he had he been told that assault of a law enforcement officer in the first degree was an 85% crime, he would have accepted the State's plea offer and entered an open plea to four of the charges. Hill testified that he first learned that first-degree assault of a law enforcement officer was an 85% crime in February 2016, when he received a revised Face Sheet from the Department of Corrections.

An affidavit from Judge Jack E. Gant, who presided at Hill's trial and sentencing, was admitted into evidence at the hearing. In his affidavit Judge Gant stated that he did not recall whether he knew at the time of Hill's sentencing that assault of a law enforcement officer in the first degree was a "dangerous felony" and

8

therefore, that Hill would be required to serve 85% of any sentence for that offense. Judge Gant's affidavit stated that his recollection was that, if a crime was subject to an 85% mandatory minimum term, the Sentencing Assessment Report would have informed him of that fact, and the attorneys would have done the same. (In this case, there is no reference either in the Sentencing Assessment Report, or in the transcript of the sentencing hearing, to the requirement that Hill serve 85% of his sentence.)

On July 17, 2018, the special master issued a Report recommending that this Court deny Hill's habeas petition. The master found that Hill had demonstrated "cause" which excused his failure to raise his current claims in his direct appeal and post-conviction relief proceedings, because neither Hill nor his counsel were aware that Hill's sentences would be subject to an 85% minimum term until the Department of Corrections issued him a revised Face Sheet in February 2016.

The master concluded, however, that Hill had failed to demonstrate that he was prejudiced by his failure to raise his claims earlier. With respect to Hill's ineffective assistance of counsel claim, the master expressed her doubts that any firm plea offer was extended to Hill. Even if it was, the master found that, "even if Mr. Hill had been correctly informed by counsel that first-degree assault of a law enforcement officer was a dangerous felony for which he would be required to serve at least 85% of his prison time, it is implausible that Mr. Hill would have accepted a plea offer under which he still would have risked effective life imprisonment." In concluding that there was no reasonable likelihood that Hill would have accepted any plea offer, the master noted that Hill's trial counsel believed Hill had a good chance for acquittal, and that Hill continued to proclaim his innocence even after being convicted by the jury.

The master's report then discussed Hill's claim that the circuit court sentenced him based on a materially incorrect understanding of the law. The

9

master found that "[t]here is nothing in the record to support Mr. Hill's claim that the judge misunderstood his parole eligibility, or that any misunderstanding caused the judge to impose a different sentence than he otherwise would have imposed." The master found that,

> [a]t sentencing, Judge Gant discussed valid considerations for the sentence he imposed, including the fact that the victims were all police officers, and that 30 shots were fired into the police car, meaning that this could easily have been a capital murder case. . . . [T]he record shows that Judge Gant did not rely at all on parole eligibility in determining the appropriate sentence. Instead, he imposed the same life sentences recommended by the jury, and ran them consecutively, presumably to ensure that Mr. Hill spent the rest of his life in prison.

Hill filed exceptions to the special master's report. After those exceptions were overruled by the master, the parties filed supplemental briefs with this Court, and we heard oral argument.

## Standard of Review

> In cases in which this Court appoints a master under Rule 68.03, the Court will sustain the master's findings and conclusions "unless there is no substantial evidence to support them, they are against the weight of the evidence, or they erroneously declare or apply the law." *State ex rel. Lyons v. Lombardi*, 303 S.W.3d 523, 526 (Mo. banc 2010); *see also Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The master's findings should receive the "weight and deference which would be given to a court-tried case by a reviewing court" due to "the master's unique ability to view and judge the credibility of witnesses." *State ex rel. Woodworth v. Denney*, 396 S.W.3d 330, 336–37 (Mo. banc 2013) (internal quotations omitted). In light of this deference, "[t]his Court should exercise the power to set aside the findings and conclusions [of the master] on the ground that they are against the weight of the evidence with caution and with a firm belief that the conclusions are wrong." *Id.* at 337.

*State ex rel. Clemons v. Larkins*, 475 S.W.3d 60, 75–76 (Mo. banc 2015).

## Analysis

Hill raises two claims in his petition for writ of habeas corpus: (1) that his trial counsel rendered ineffective assistance by misinforming him regarding his

10

parole eligibility; and (2) that his sentences violated due process, because they were based on the judge's mistaken understanding of Hill's parole eligibility.

Rule 91.01(b) provides that "[a]ny person restrained of his liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint." A person is entitled to habeas relief if he or she is "restrained of his [or her] liberty in violation of the constitution or laws of the state or federal government." *State ex rel. Carr v. Wallace*, 527 S.W.3d 55, 59 (Mo. banc 2017) (quotations, citation, and ellipsis removed). Importantly, "[t]he petitioner bears the burden of establishing that he or she is entitled to habeas relief." *State ex rel. Fleming v. Mo. Bd. of Prob. & Parole*, 515 S.W.3d 224, 229 (Mo. banc 2017) (citing *State ex rel. Nixon v. Jaynes*, 73 S.W.3d 623, 624 (Mo. banc 2002)); *see also, e.g.*, *Clemons*, 475 S.W.3d at 76; *State ex rel. Woodworth v. Denney*, 396 S.W.3d 330, 337 (Mo. banc 2013).

Hill did not raise either claim which he now asserts in his direct appeal, or in his motion for post-conviction relief. Generally, habeas relief is not available for claims that are "procedurally barred"—namely, claims that could have been raised on direct appeal or post-conviction review, but were not. *Clemons*, 475 S.W.3d at 76 (citing *Woodworth*, 396 S.W.3d at 337). Missouri courts excuse claims that are procedurally barred in three circumstances:

> (1) a claim of actual innocence or (2) a jurisdictional defect or (3)(a) that the procedural defect was caused by something external to the defense—that is, a cause for which the defense is not responsible—and (b) prejudice resulted from the underlying error that worked to the petitioner's actual and substantial disadvantage [(the "cause and prejudice" standard)].

*Id.* (quoting *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 516–17 (Mo. banc 2010)).

Hill's habeas petition alleges that his failure to raise his present claims earlier is excused, because those claims allege a "jurisdictional defect" in his sentencing, and because he can demonstrate "cause" for, and "prejudice" flowing

11

from, his procedural default. The State disputes that either of Hill's claims alleges a "jurisdictional defect" in the sense that term is understood in the habeas caselaw. The State also argues that Hill failed to establish either "cause" for his delayed assertion of his claim, or resulting "prejudice."

It is unnecessary for this Court to decide whether Hill has established a justifiable excuse for his failure to raise his habeas claims in earlier proceedings. Even if Hill's procedural default is excused, he must still establish an underlying claim that his constitutional rights were violated. The three circumstances excusing a procedural default are merely "gateways," which permit the consideration of the petitioner's underlying claims. "'[G]ateway' habeas claims at best entitle a petitioner 'to review on the merits of the [petitioner's] otherwise defaulted constitutional claim[s].'" *In re Lincoln v. Cassady*, 517 S.W.3d 11, 17 (Mo. App. W.D. 2016) (quoting *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 546 (Mo. banc 2003)). "Gateway" claims "do not independently support habeas relief, but are the condition precedent to review of claims of constitutional error that are procedurally barred." *McKim v. Cassady*, 457 S.W.3d 831, 842 n.21 (Mo. App. W.D. 2015) (citation omitted); *accord Ferguson v. Dormire*, 413 S.W.3d 40, 52–53 (Mo. App. W.D. 2013) (citation omitted).

Here, even if his procedural default was excused, the master's factual findings establish that Hill failed to prove either of his underlying habeas claims. We therefore proceed directly to an analysis of Hill's underlying claims, based on the assumption that he could establish an excuse for his procedural default. *See Lincoln*, 517 S.W.3d at 20.

## I.

Hill's first claim asserts that his counsel misinformed him that he would not be subject to a mandatory minimum prison term on any sentence for first-degree assault of a law-enforcement. Hill's petition alleged that, if counsel had properly

12

advised him that he would be required to serve 85% of any sentence, he "would have accepted the State's plea offer and would be serving lesser overall sentences."

The special master's report expresses doubt that the State extended any pre-trial plea offer to Hill. The report also notes that Hill's counsel was unable to specifically recall whether he informed Hill that he faced no mandatory minimum term of imprisonment. The master did not expressly find, however, that Hill had failed to prove that a plea offer had been made, or that he had failed to prove that his counsel provided incorrect advice concerning his parole eligibility. What the master *did* find was that Hill had failed to prove that he would have accepted a plea offer if he had known that first-degree assault of a law enforcement officer was a "dangerous felony" subject to the 85% rule. The master's report explains:

> Mr. Hill argues that if he knew he was facing the possibility of life without parole, he would not have risked going to trial, but instead would have pled guilty to the State's offer in the hope that the judge would grant him leniency at sentencing. However, the Court finds that even if Mr. Hill had been correctly informed by counsel that first-degree assault of a law enforcement officer was a dangerous felony for which he would be required to serve at least 85% of his prison time, it is implausible that Mr. Hill would have accepted a plea offer under which he still would have risked effective life imprisonment. If a firm plea offer was extended, which the Court doubts, it would have required Mr. Hill to plead guilty to two counts of assault of a law enforcement officer in the first degree and two counts of armed criminal action. The parties were free to argue for any sentence within the range of punishment, including up to life imprisonment on each of the assault of a law enforcement officer counts and any number of years on the armed criminal action counts, and Judge Gant was free to impose concurrent or consecutive sentences. Therefore, Mr. Hill risked possible consecutive life sentences if he chose to plead guilty, which was the same result he faced if he lost at trial. . . .
>
> Moreover, the Court finds it particularly unlikely that Mr. Hill would have chosen to plead guilty instead of going to trial in light of Mr. Burdick's testimony that his advice whether to plead guilty or not would depend on the strength of the evidence, and he thought they had a good shot at an acquittal. Mr. Hill knew he was guaranteed to serve prison time if he pled guilty, whereas he could hope to walk out of jail a free man after trial. In addition, Mr. Hill maintained his innocence

13

even at his sentencing hearing, making it highly unlikely that he would have pled guilty to crimes that he continuously denied committing.

(Record citations omitted.)

Even if we assume that the State made a pre-trial plea offer, and that Hill's trial counsel provided ineffective assistance by informing Hill that he faced no mandatory minimum prison term, Hill was still required to show that he relied on that misinformation in choosing to reject the State's plea offer. *See Webb v. State*, 334 S.W.3d 126, 131 (Mo. banc 2011) (post-conviction relief movant claiming similar misadvice "may be entitled to relief if he proves the facts he has alleged and establishes that he was prejudiced by relying on misinformation"); *Welch v.* State, 326 S.W.3d 916, 920 (Mo. App. W.D. 2010) (even assuming counsel incompetently misadvised defendant concerning parole eligibility, affirming denial of post-conviction relief where motion court found it "incredible" that defendant would have proceeded to trial if properly advised); *Miller v. State*, 260 S.W.3d 393, 396 (Mo. App. W.D. 2008) (similar).

Here, the master found Hill would not have pleaded guilty, even if he had been properly advised concerning his parole eligibility. That finding is fully supported by the record. Even accepting Hill's evidence, the State's pre-trial plea offer would have allowed the State to argue for any authorized sentence. Even if Hill had pleaded guilty to only two counts of first-degree assault of a law enforcement officer, and two counts of armed criminal action, he would have faced the prospect of receiving multiple sentences of life imprisonment, and of the sentences running consecutively.[3] Pleading guilty to such serious offenses,

---

[3] At the time of Hill's crimes, first-degree assault of a law enforcement officer was a class A felony, § 565.081.2, RSMo 1994, which was subject to punishment by imprisonment for "not less than ten years and not to exceed thirty years, or life imprisonment." § 558.011, RSMo 1994. Armed criminal action was an unclassified felony which could carry any sentence of three years or more. § 571.015, RSMo 1994.

14

pursuant to an "open" plea offer, would have offered Hill relatively few benefits. In addition, his counsel believed that Hill faced a good chance of acquittal, and Hill proclaimed his innocence even at his sentencing hearing. The assessment by Hill and his counsel of his risk of conviction likewise makes it unlikely that parole eligibility would have "tipped the balance" and persuaded Hill to accept a plea offer.

Based on the special master's factual findings, we deny relief on Hill's first habeas claim.

## II.

Hill's second habeas claim contends that his sentences violated due process, because Judge Gant sentenced him based on the mistaken belief that first-degree assault of a law enforcement officer was not an 85% crime.

"'A sentence passed on the basis of a materially false foundation lacks due process of law and entitles the defendant to a reconsideration of the question of punishment in the light of the true facts, regardless of the eventual outcome.'" *State v. Pierce*, 548 S.W.3d 900, 904 (Mo. banc 2018) (quoting *Wraggs v. State*, 549 S.W.2d 881, 884 (Mo. banc 1977)); *see also State v. Perry*, 548 S.W.3d 292, 301 (Mo. banc 2018).

In order to establish a due-process violation, Hill was first required to prove that Judge Gant harbored an incorrect understanding of Hill's parole-eligibility. But the master's report found that Hill had failed to satisfy his burden of proof: "[t]here is nothing in the record to prove that Judge Gant held a mistaken belief as to Mr. Hill's parole eligibility." While Hill argues that it is unrealistic, and unfair, to expect him to prove what the sentencing judge believed, more than fifteen years after his criminal sentencing, the law is well-established that the burden is on the petitioner to prove his entitlement to habeas relief. The judge's understanding of Hill's parole eligibility is plainly a *factual* issue, on which Hill bore the burden of proof, and on which the master's findings are entitled to deference. We also note

that it is not self-evident that the sentencing court would have misunderstood Hill's parole eligibility. In the *Mann* case, for example, the prosecution expressly advised the sentencing court, at approximately the same time as Hill's sentencing, that first-degree assault of a law enforcement officer <u>was</u> subject to an 85% minimum term. *See* 526 S.W.3d at 293. Without proof that Judge Gant held a contrary understanding, Hill cannot establish that his sentences violated his due-process rights.

Based on the master's finding that Hill failed to prove that the sentencing court held an incorrect belief as to his parole eligibility at the time of Hill's sentencing, we deny the second claim asserted in Hill's habeas petition.

**Conclusion**

Hill's petition for a writ of habeas corpus is denied.

_____
Alok Ahuja, Judge

All concur.